IN RE DRIVERS' LICENSES OF HILARY J. LeCLAIRE AND ANOTHER v. W. R. HOAGLUND, COMMISSIONER OF PUBLIC SAFETY.

208 N. W. 2d 90.

April 13, 1973—Nos. 43865, 43880.

*Warren Spannaus,* Attorney General, and *Frederick S. Suhler, Jr.,* Special Assistant Attorney General, for appellant.

*Smith, McRae & Hilligan* and *Thomas M. Hilligan,* for respondent LeClaire.

*Smith & Roue* and *Gordon H. Smith,* for respondent Bjerkness.

Heard before Knutson, C. J., and Todd, MacLaughlin, and Olson, JJ. Considered and decided on the record by the court en banc.

MACLAUGHLIN, JUSTICE.

These appeals from orders of the district court granting reinstatement of the driver's licenses of respondents, Hilary J. LeClaire and Lyle Kenneth Bjerkness, were consolidated for hearing before this court. We affirm.

In separate proceedings, the commissioner of public safety, acting on certificates of conviction, revoked for 30 days the driver's licenses of each of the respondents. Each respondent had

pled guilty to driving a motor vehicle with an amount of alcohol in the blood of 0.10 percent or greater in violation of Minn. St. 169.121, subd. 1(d). Thereafter, each respondent initiated a proceeding pursuant to § 171.19 seeking reinstatement of the revoked license. The commissioner has appealed from the orders of reinstatement.

Our decision is best understood by discussing respondents' claims before the trial court:

1. Respondents argued in the trial court, and again in this court, that § 169.121, subd. 1(d), which prohibits persons whose blood contains 0.10 percent or more by weight of alcohol from driving a motor vehicle, was implicitly repealed by Ex. Sess. L. 1971, c. 27, § 6.

Prior to 1971, § 169.121 read in part as follows (Minn. St. 1969, § 169.121):

"Subdivision 1. It shall be unlawful and punishable as provided in this section for any of the following persons to drive, operate or be in actual physical control of any vehicle within this state:

(a) A person who is under the influence of an alcoholic beverage or narcotic drug;

(b) A person who is an habitual user of narcotic drugs;

(c) A person who is under the influence of a combination of any two or more of the elements named in subsections (a) and (b) hereof.

"The provisions of this subdivision apply, but are not limited in application, to any person who drives, operates, or who is in actual physical control of any vehicle in the manner prohibited by this subdivision upon the ice of any lake, stream, or river, including but not limited to the ice of any boundary water.

\* \* \* \* \*

"Subd. 3. Every person who is convicted of a violation of this section shall be punishable by imprisonment of not less than ten days nor more than 90 days, or by a fine of not less than $10 nor more than $100, *and his driver's license shall be revoked for not*

*less than 30 days,* except that every person who is convicted of a violation of this section, when such violation is found to be the proximate cause of grievious bodily injury or death to another person, shall be punished by imprisonment for not less than 60 days nor more than 90 days, and his driver's license shall be revoked for not less than 90 days." (Italics supplied.)

In the 1971 regular session of the legislature, Minn. St. 1969, § 169.121, subd. 1, was amended by adding, among other things, a new subsection (d). It then read in part as follows (L. 1971, c. 893, § 1):

"Subdivision 1. It shall be unlawful and punishable as provided in this section for any of the following persons to drive, operate or be in actual physical control of any vehicle within this state:

(a)  A person who is under the influence of an alcoholic beverage or narcotic drug;

(b)  A person who is an habitual user of narcotic drugs;

(c)  A person who is under the influence of a combination of any two or more of the elements named in subsections (a) and (b) hereof;

(d)  *A person whose blood contains 0.10 percent or more by weight of alcohol.*" (Underlining in original, indicating additions.)

In the 1971 extra session, a second amendment was made to Minn. St. 1969, § 169.121, subd. 1, using the following language (Ex. Sess. L. 1971, c. 27, § 6):

"Subdivision 1. It shall be (UNLAWFUL AND PUNISHABLE AS PROVIDED IN THIS SECTION) *a misdemeanor* for any of the following persons to drive, operate or be in actual physical control of any vehicle within this state:

(a)  A person who is under the influence of an alcoholic beverage or narcotic drug;

(b)  A person who is an habitual user of narcotic drugs;

(c) A person who is under the influence of a combination of any two or more of the elements named in subsections (a) and (b) hereof.

"The provisions of this subdivision apply, but are not limited in application, to any person who drives, operates, or who is in actual physical control of any vehicle in the manner prohibited by this subdivision upon the ice of any lake, stream, or river, including but not limited to the ice of any boundary water." (Underlining in original, indicating additions; overscoring in original, indicating deletions.)

The first amendment, enacted in the regular session, added subd. 1(d) as an offense and also added other language not relevant here. The second amendment, enacted in the special session, did not include in the body of the statute to be amended the language added in the regular session. Respondents argue that this implies that subd. 1(d) was implicitly repealed at the time the second amendment was enacted.

We have concluded that this argument is without merit and hold that § 169.121, subd. 1(d), has not been repealed. Minn. St. 645.33 provides:

"When two or more amendments to the same provision of law are enacted at the same or different sessions, one amendment overlooking and making no reference to the other or others, the amendments shall be construed together, if possible, and effect be given to each. If the amendments be irreconcilable, the latest in date of final enactment shall prevail."

The two amendments are not irreconcilable. There is nothing inconsistent in adding subd. 1(d) as an offense and making the offenses in subd. 1(a, b, c) misdemeanors. We find no legislative intent to repeal subd. 1(d) merely because it was not included in the text of § 169.121, subd. 1, for purposes of the second amendment.

Unlike the procedure in some state legislatures, a bill for the amendment of a Minnesota statute contains the full text of the

chapter, section, or subdivision to be amended. Additions are underscored in a typewritten bill or italicized if the bill is printed, and deletions are overscored in a typewritten bill or capitalized and enclosed in brackets if the bill is printed. What is actually enacted as an amendment must be determined from these indicators. In In re Status of Town of White Bear, 268 Minn. 383, 388, 129 N. W. 2d 560, 564 (1964), we discussed the amendment procedures as follows:

"Two or more bills are often considered during a legislative session which amend the same chapter, section, or subdivision, but nevertheless do not conflict with respect to the additions or deletions which each makes to the prior law. If the same author had been interested in all the proposed bills the various amendments could have been combined in one bill. This, however, is not often the case. Invariably, bills are drafted which do not reflect alterations made by prior amendments in the same legislative session. The drafter might not have been aware of the passage of the prior amendment, or, as is common, the bill might have been drafted before the prior amendment was passed by the legislature or even drafted. Whatever the reason, the important fact remains that when a bill amending a statute is passed, there is no intention on the part of the legislature to enact as new law the bill's recitation of the text of the amended law. The text of the law being amended in the bill is the vehicle by which the actual amendment is carried through. What is actually enacted by an amendment must be determined from the new language, as well as from the deletions, and not from the recitation of the old provisions."

If the legislature had intended to repeal subd. 1(d), which it had added in the regular session, subd. 1(d) would have been repeated and overscored in the second amendment in the same manner as the deleted words "unlawful and punishable as provided in this section." Since that was not done, and the two amendments are not inconsistent, subd. 1(d) has not been repealed and is in effect.

2.  Respondents contend that, even if subd. 1(d) is in effect, it is not a misdemeanor but merely a petty misdemeanor and that a driver's license cannot be revoked for commission of a petty misdemeanor. As set forth above, the second amendment clearly made violation of subd. 1(a, b, or c) a misdemeanor, but that amendment omitted any reference to subd. 1(d), presumably through oversight. Section 169.89, subd. 1, provides in part:

"Unless otherwise declared in this chapter with respect to particular offenses, it is a petty misdemeanor for any person to do any act forbidden or fail to perform any act required by this chapter * * *."

The state argues that subd. 1(d) should be considered a misdemeanor even though it was not included in the text of the bill as presented to the legislature at the time violations of subd. 1(a, b, or c) were made misdemeanors through the enactment of the second amendment. It claims that because subd. 1(d) was in effect at the time, we should hold violation of that provision to be a misdemeanor the same as violations of subd. 1(a, b, or c).

Respondents argue that the omission of subd. 1(d) in the second amendment creates confusion and uncertainty as to its status and that, therefore, it should be construed to be a petty misdemeanor. The trial court agreed with respondents and so do we. While the state's argument is not without persuasive force, we feel that when in doubt whether an offense is intended to be a misdemeanor or a petty misdemeanor, it is our duty to hold it to be in the least serious of its possible classifications. This is particularly true in view of the legislative scheme of classification set out in § 169.89, subd. 1, quoted above, which states that unless otherwise declared in c. 169 with respect to particular offenses, it is a petty misdemeanor for any person to do any act forbidden or to fail to perform any act required by c. 169. The legislature must clearly declare an offense to be a misdemeanor; otherwise, it is a petty misdemeanor. Therefore, we hold the violation of subd. 1(d) to be a petty misdemeanor.

3. The only remaining question is whether a driver's license may be revoked for the violation of a petty misdemeanor. The trial court held that the revocation of a driver's license exceeds the penalties allowed for petty misdemeanors under § 169.89, subd. 2, which reads:

"A person charged with a petty misdemeanor shall not be entitled to a jury trial but shall be tried by a judge without a jury. If convicted, he shall be punished by a fine of not more than $100."

While that language does not in itself necessarily preclude the revocation of a driver's license for the violation of a petty misdemeanor, we have concluded that, taking the language of § 169.121 as a whole, the revocation of a license for a violation of subd. 1(d) is not permissible. The commissioner apparently acted to revoke the license under § 169.121, subd. 3,[1] which provides that conviction for a violation of § 169.121 shall be punishable "by imprisonment of not less than ten days nor more than 90 days, or by a fine of not less than $10 nor more than $100, and his driver's license shall be revoked for not less than 30 days." The reference to imprisonment implies that § 169.121, subd. 3, was intended to provide sanctions for misdemeanors, such as itemized in subd. 1(a, b, or c). Imprisonment is not permissible for the violation of a petty misdemeanor. Therefore, because we have held subd. 1(d) to be a petty misdemeanor, we hold that § 169.121, subd. 3, does not apply to subd. 1(d). The penalty available for violation of subd. 1(d) is a fine of not more than $100, as provided in § 169.89, subd. 2.[2]

---

[1] Minn. St. 171.17, the section under which the commissioner ordinarily acts to revoke a driver's license, does not contain specific authority to revoke a driver's license for a violation of § 169.121, subd. 1(d).

[2] We are aware that § 169.121, subd. 1(d), may have been interpreted and relied upon by prosecutors as a misdemeanor. The legislature is presently in session. If the legislature wishes to make violation of subd. 1(d) a misdemeanor, it has that opportunity.

For the foregoing reasons, the trial court's orders for reinstatement of respondents' driver's licenses are affirmed.[3]

Affirmed.

UPON PETITION FOR REHEARING

On May 11, 1973, the following opinion was filed:

Considered en banc.

PER CURIAM.

The commissioner of public safety has petitioned for a rehearing.

As to persons previously convicted of a violation of Minn. St. 169.121, subd. 1(d), this opinion shall affect only those who had an appeal pending on, or filed one after, April 13, 1973, the date of the decision, or those persons whose time to appeal to this court has not expired and who apply for relief pursuant to this opinion prior to the expiration of the appeal period. Affected persons should apply to the trial court for relief, except that petitions for reinstatement of a driver's license should be made in conformance with § 171.19.

The petition for rehearing is denied.

---

[3] We are mindful that proceedings for the revocation of a driver's license are civil in nature and that the revocation is an exercise of the police power for the protection of the public. State, Department of Highways, v. Normandin, 284 Minn. 24, 169 N. W. 2d 222 (1969); State, Department of Highways, v. Cohoon, 291 Minn. 222, 190 N. W. 2d 488 (1971).