STATE, DEPARTMENT OF PUBLIC SAFETY,
v. MICHAEL MULVIHILL.
STATE, DEPARTMENT OF PUBLIC SAFETY,
v. WELDON RALPH SWEARINGEN.
STATE, DEPARTMENT OF PUBLIC SAFETY,
v. DAVID JOSEPH HUTTON.
STATE, DEPARTMENT OF PUBLIC SAFETY,
v. CARROLL KENNETH CORDES.

227 N. W. 2d 813.

March 28, 1975—Nos. 44810, 44857, 44864, 45052.

*Warren Spannaus,* Attorney General, and *Thomas G. Lockhart* and *Joel A. Watne,* Special Assistant Attorneys General, for appellant.

*Bjorn J. Ulstad* and *Harry Ray,* for respondent Mulvihill.

*Thomas E. Moore,* for respondent Swearingen.

*George H. Frisch,* for respondent Hutton.

*Jack M. Winick,* for respondent Cordes.

Heard before Peterson, Todd, and Scott, JJ., and considered and decided by the court en banc.

TODD, JUSTICE.

The State of Minnesota appeals from four separate lower court decisions rescinding orders of the commissioner of public safety which had revoked the driver's license of each of the respective defendants under the provisions of Minn. St. 169.123, subd. 4, the implied-consent statute. The appeals were consolidated for hearing. Three of the defendants were arrested for and charged with driving while under the influence of an intoxicating beverage in violation of Minn. St. 1971, § 169.121, subd. 1(a). The fourth, David Joseph Hutton, was charged with driving with a blood alcohol content in excess of .10 percent in violation of Minn. St. 1971, § 169.121, subd. 1(d). There is a dispute as to whether Hutton was arrested for a violation of subd. 1(a) or subd. 1(d). All subsequently pled guilty to the charge of driving a motor vehicle with a blood alcohol content in excess of .10 percent. This offense constituted a petty misdemeanor at the time of the pleas. We have held that a conviction under Minn. St. 1971, § 169.121, subd. 1(d), violation of which constituted a petty misdemeanor, could not result in license revocation under § 169.121, subd. 3. In re Driver's License of LeClaire v. Hoaglund, 296 Minn. 85; 208 N. W. 2d 90 (1973). We narrowly construe our decisions which restrict the application of the implied-consent statute and hold that in each of the cases here on appeal there existed proper circumstances to permit revocation under the implied-consent statute, Minn. St. 169.123. We accordingly reverse the decisions of the lower courts.

The facts giving rise to the respective appeals are briefly summarized as to each defendant:

### Michael Mulvihill

On March 4, 1973, defendant was arrested by a St. Paul police officer on a charge of driving while under the influence of an alcoholic beverage. He was taken to police headquarters and read

the implied-consent advisory. Defendant refused to take either a blood or breath test for the reason that he considered himself to be under false arrest and intended to do whatever his attorney advised him to do. On March 12, 1973, defendant entered a plea of not guilty to the charge of driving while under the influence of an alcoholic beverage, Minn. St. 1971, § 169.121, subd. 1(a). On May 31, 1973, he entered a plea of guilty to a reduced charge of driving with more than a .10 percent blood alcohol level, § 169.121, subd. 1(d). On April 13, 1973, the state notified defendant of its intention to revoke his driver's license under the implied-consent statute, Minn. St. 169.123, subd. 4. On April 23, 1973, defendant requested a hearing upon the revocation. On December 10, 1973, the municipal court of St. Paul entered an order rescinding the revocation order.

### Weldon Ralph Swearingen

On March 19, 1973, defendant was arrested by officers of the St. Paul Police Department for the offense of driving while intoxicated. Following arrest, he was taken to St. Paul police headquarters, informed of the provisions of the implied-consent law, and requested to provide a sample of his blood or breath for chemical testing. Defendant refused to submit to any form of chemical testing, complaining of police harassment. On May 22, 1973, defendant appeared in St. Paul municipal court and entered a plea of guilty to the reduced charge of driving a motor vehicle with over .10 percent blood alcohol in his system. On May 1, 1973, the state notified defendant of its intention to revoke his driver's license and on May 29, the state issued a revocation order under Minn. St. 169.123. On May 31, 1973, defendant requested a hearing upon said revocation order, since he had not received the notice of intent to revoke. On October 9, 1973, the St. Paul municipal court entered an order rescinding the revocation order of May 29, 1973.

### Carroll Kenneth Cordes

Defendant was arrested on April 17, 1973, on a charge of driving while under the influence of an alcoholic beverage. After

being read the implied-consent advisory and being requested to submit a blood or breath sample, defendant refused to submit either for the stated reason that he was arrested illegally. On May 11, 1973, he entered a plea of not guilty to the charge of driving while under the influence of an alcoholic beverage. On April 1, 1974, defendant pled guilty to the charge of driving with more than a .10 percent blood alcohol. On May 22, 1973, the state mailed to defendant a notice of intention to revoke his driver's license under Minn. St. 169.123. On May 31, 1973, defendant requested a hearing upon said revocation. On April 2, 1974, the Municipal Court of Hennepin County entered its order rescinding the revocation order entered by the state on May 22, 1973.

### David Joseph Hutton

The state alleges that on March 17, 1972, defendant was arrested for the offense of driving while under the influence of an intoxicating beverage. Defendant contends that he was arrested for the offense of driving with more than .10 percent blood alcohol. The trial court subsequently found that he was charged with the offense of driving with more than .10 percent blood alcohol, a fact which is not disputed by the state. On October 6, 1972, defendant entered a plea of guilty to a charge of careless driving. On May 24, 1973, defendant entered a plea of guilty to driving with over .10 percent blood alcohol, in addition to his plea of careless driving. On April 21, 1972, defendant had been notified by the state of its intention to revoke his driver's license under Minn. St. 169.123. Defendant demanded a hearing on the revocation notice. The order of revocation was sustained by order of the Hennepin County Municipal Court on March 7, 1973, and defendant appealed this order to the District Court of Hennepin County. On November 20, 1973, the District Court of Hennepin County entered its order rescinding the revocation order of the state.

Procedurally, each of these cases fits within the time to which our decision in In re Driver's License of LeClaire v. Hoaglund, *supra,* applies. In that case we held that legislative action with

respect to Minn. St. 1971, § 169.121, subd. 1(d), had created a situation in which a person convicted of operating a motor vehicle with more than .10 percent blood alcohol was guilty of a petty misdemeanor, thereby limiting the criminal sanction to a fine of $100 and precluding license revocation under § 169.121, subd. 3.[1]

■ Defendants, while stating the legal issue in various ways, all rely on our decision in State, Department of Highways, v. Schlief, 289 Minn. 461, 185 N. W. 2d 274 (1971). In that case, defendant was arrested for driving while under the influence of an alcoholic beverage. Two days later, he pled guilty to said charge. Upon learning that Schlief had refused chemical testing, the state notified him that it intended to revoke his driver's license under the provisions of the implied-consent statute. Defendant requested a hearing. At the hearing defendant testified that the reason he refused the chemical test was because he knew he had to plead guilty to the criminal charge and he did not know that the law applied if he pled guilty. The lower court rescinded the order of revocation, finding that he had reasonable grounds under Minn. St. 169.123, subd. 6, for refusing to take the test. With reference to this statute, we said (289 Minn. 462, 185 N. W. 2d 275):

"This statute is unique in that it provides for consideration of the issue of defendant's reasonableness in refusing to take the chemical test. Minn. St. 169.123, subd. 2, states that the peace officer should inform the person 'that his right to drive *may* be revoked or denied if he refuses to permit the test.' * * * This type of warning indicates to the person being warned that revo-

---

[1] In response to our decision in In re Driver's License of LeClaire v. Hoaglund, 296 Minn. 85, 208 N. W. 2d 90 (1973), the legislature passed L. 1973, c. 421, § 1, approved May 19, 1973, and effective the following day, making subd. 1(d) a misdemeanor rather than a petty misdemeanor. Thus, offenses arising thereafter are not affected by the LeClaire decision.

cation is not mandatory upon refusal to take the chemical test if he has reasonable grounds to refuse the test.

"One of the purposes of § 169.123 is to provide safer drivers on our highways by making available to law-enforcement officers evidence to establish in court that the person arrested was driving while under the influence of alcohol. When defendant pleaded guilty he obviated every legitimate purpose the 'implied consent' statute can have. Consequently, if a person refuses to take the chemical test when he intends to plead guilty to the charge of driving while intoxicated and does so plead, such person is not accorded justice if the commissioner nevertheless proceeds to suspend his driver's license for a period of 6 months, for the reason that in these circumstances the action of revoking his license is unreasonable and serves no valid purpose."

At the time of our decision in Schlief, § 169.121, subd. 3, provided, as it does now, for the automatic revocation of a driver's license for not less than 30 days upon conviction of any subd. 1 violation. It should be noted that at the time of the Schlief decision, clause (d) was not a part of subd. 1 of the statute. Further, the peculiar legislative history of subd. 1(d), which created the temporary situation in which revocation under subd. 3 was barred, was not contemplated in the Schlief decision. That case reflected our view that one revocation proceeding pursuant to the criminal sanctions of § 169.121, subd. 3, was sufficient to protect the public from persons operating motor vehicles while consuming alcoholic beverages and satisfied the remedial purposes of the civil implied-consent statute. In the instant cases, because there can be no revocation under § 169.121, subd. 3, every legitimate purpose of the implied-consent law has not been obviated by a plea of guilty to the subd. 1(d) offense.

■ In order for a defendant to establish reasonable grounds for refusing to submit to chemical testing as otherwise required by statute and avail himself of the doctrine in the Schlief decision, he must do the following: (1) At the time of the refusal, he must intend to plead guilty to a charge of violating Minn. St.

169.121, subd. 1; (2) he must enter a plea of guilty to a charge which subjects him to automatic revocation under § 169.121, subd. 3; and (3) he must plead guilty at the first available opportunity. None of the defendants in these consolidated appeals meets all of these criteria, and, therefore, their reliance upon Schlief is misplaced. Thus, the revocation orders of the state are valid and must be sustained.

■ We feel it important to again emphasize the essential differences between license revocation under § 169.121, subd. 3, and license revocation under § 169.123, subd. 4. The former is automatically imposed as a *criminal* penalty upon conviction of a § 169.121 violation.[2] It is triggered by the outcome of the criminal proceeding and is imposed through the judicial system. Revocation under this section is for not less than 30 days. On the other hand, revocation under the implied-consent law is essentially *civil* in nature. State, Department of Public Safety, v. House, 291 Minn. 424, 425, 192 N. W. 2d 93, 94 (1971). It is imposed administratively by the commissioner of public safety regardless of the outcome of the criminal proceeding arising out of the same incident and is triggered by the refusal to submit to chemical testing. Revocation for a period of 6 months is mandatory.

■ Defendant Hutton raises an additional issue by his assertion that he was arrested for violating Minn. St. 1971, § 169.121, subd. 1(d). He argues that chemical testing may be administered only in accord with the statutory requirements of Minn. St. 169.-123, subd. 2, and that said requirements were not met.

Minn. St. 169.123, subd. 2, provides in part:

"Any person who drives or operates a motor vehicle upon the public highways of this state shall be deemed to have given consent subject to the provisions of this section and section 169.121, subdivision 2, to a chemical test of his blood, breath, or urine for the purpose of determining the alcoholic content of his blood. The

---

[2] As noted above, our decision in In re Driver's License of LeClaire v. Hoaglund, *supra,* precludes such a revocation for violation of § 169.121, subd. 1(d), during the specified time period.

test shall be administered at the direction of a peace officer. *The test may be administered when the officer has reasonable and probable grounds to believe that a person was driving or operating a motor vehicle while said person was under the influence. of an alcoholic beverage, and one of the following conditions exist: (1) the said person has been lawfully placed under arrest for alleged commission of the said described offense in violation of section 169.121,* or an ordinance in conformity therewith; or, (2) the person has been involved in a motor vehicle collision resulting in property damage, personal injury, or death. The test may also be administered when the officer has reason to believe that a person was driving or operating a motor vehicle in violation of section 169.121 or an ordinance in conformity therewith and the person has either refused to take the preliminary screening test provided for by section 169.121, subdivision 1, or such preliminary screening test was administered and recorded a blood alcohol level of .10 percent or more by weight of alcohol." (Italics supplied.)

In State, Department of Public Safety, v. Grovum, 297 Minn. 66, 71, 209 N. W. 2d 788, 791 (1973), we pointed out that this statute requires:

"* * * [T]hat the officer have reasonable and probable grounds to believe that a person was driving or operating a motor vehicle while under the influence of an alcoholic beverage and, in addition, allow[s] the test to be requested if any one of the following conditions exist: (a) The person has been validly placed under arrest for commission of the offense; or (b) the person has been involved in a motor vehicle collision resulting in death, injury, or property damage; or (c) the person has refused, when properly requested, to take a preliminary screening test; or (d) a preliminary screening test was taken and recorded a blood alcohol content of .10 percent or greater."

Defendant concedes that the arresting officer had reasonable and probable grounds to believe that he was driving while under

the influence of an alcoholic beverage, but contends that he was not lawfully placed under arrest for the "alleged commission of the said described offense in violation of section 169.121." [3] He asserts that "said described offense" refers to driving while under the influence of an alcoholic beverage, a violation of § 169.121, subd. 1(a). Since he was allegedly arrested for violating § 169.121, subd. 1(d), he could not be compelled to submit to testing.

Regardless of whether defendant was arrested for violation of subd. 1(a) or subd. (d), we believe he reads the statute incorrectly. We can discern no legislative purpose in requiring a driver to submit to chemical testing when arrested for a subd. 1(a) violation, yet permitting him to avoid such request when arrested for a subd. 1(d) violation. In both situations, the rationale for requiring chemical testing is the same—that of providing evidence for use in § 169.121 prosecutions. See, State, Department of Highways, v. Schlief, *supra*. Thus, we hold that chemical testing may be requested when the officer has probable cause to believe that a person was driving in violation of § 169.121, subd. 1, and one of the other conditions exists, such as, in this case, being validly placed under arrest. Consequently, defendant Hutton's refusal to take chemical testing as offered to him under the provisions of § 169.123, subd. 2, permits the revocation procedures instituted by the state pursuant to § 169.123, subd. 4. Subsequent results of criminal procedures have no effect on the application of the civil proceedings under § 169.123. State, Department of Public Safety, v. House, *supra;* State, Department of Public Safety, v. Anderson, 291 Minn. 545, 192 N. W. 2d 95 (1971).

This determination is consistent with our holding in State, Department of Highways, v. Schlief, *supra*, and In re Driver's License of LeClaire v. Hoaglund, *supra*. In Schlief, the revocation

---

[3] Defendant was not involved in a motor vehicle collision nor was a preliminary screening test requested of him. Thus, none of the other conditions under which chemical testing may be required is present.

proceedings were effected under the criminal sanctions. There was then an additional proceeding to obtain revocation under the civil implied-consent statute which was disallowed. In LeClaire, revocation was sought under the criminal sanctions. No revocation proceeding under the civil implied-consent statute was attempted in that case.

For the reasons stated herein, the decision of the lower court in each of these cases is reversed and remanded with instructions to enter an order sustaining the revocation order of the state.

Reversed.