Paul Francis GOBLISCH, Respondent,

v.

COMMISSIONER OF PUBLIC SAFETY,
Petitioner, Appellant.

No. C4–83–405.

Supreme Court of Minnesota.

May 11, 1984.

Hubert H. Humphrey, III, Atty. Gen., Linda F. Close, James B. Early, Sp. Asst. Attys. Gen., St. Paul, for appellant.

Arnold E. Kempe, West St. Paul, for respondent.

YETKA, Justice.

Defendant was convicted of violating Minn.Stat. § 169.121, subd. 1, driving while under the influence of alcohol, and his driver's license was revoked. The Commissioner of Public Safety ordered additional revocation pursuant to Minn.Stat. § 169.123, subd. 4 (the implied consent statute), based on the same incident. The implied consent revocation was upheld by a county court judge, but reversed by a three-judge panel of the district court. We affirm the district court.

On August 7, 1981, Paul Goblisch was stopped for driving while under the influence of alcohol. At the Carver County Sheriff's office, he provided a breath sample which indicated an alcohol concentration of .14%. For the purpose of this appeal, Goblisch has stipulated that the arrest was lawful and that the test results were accurate. Goblisch was then charged under Minn.Stat. § 169.121, subd. 1(a) and (d), driving while under the influence of alcohol and driving with an alcohol concentration of .10% or more. He was tried on these charges in the Carver County District Court on October 22 & 23, 1981, convicted of violating the statute, and his driver's license was revoked pursuant to Minn.Stat. § 169.121, subd. 4.

On August 7, 1981, Goblisch was also notified that the Commissioner of Public Safety intended to revoke his license for 90 days pursuant to the implied consent statute. This statute provides that the commissioner can revoke a driver's license if the driver either (1) refuses to provide a sample of his blood, breath, or urine for analysis or (2) provides a sample which indicates an alcohol concentration of .10%

or more. Revocation in this case was based on the second provision.

Implied consent revocation was postponed while Goblisch pursued administrative and judicial review. On December 30, 1981, Goblisch moved the county court to dismiss the implied consent revocation proceedings against him, alleging that the commissioner's handling of implied consent revocations violated the Equal Protection Clause of the Fourteenth Amendment. At a hearing on the motion, the commissioner stipulated that it was his policy to drop implied consent proceedings against all defendants who plead guilty to driving while under the influence of alcohol (DWI) and have their driver's licenses revoked. The commissioner does not drop proceedings when the defendant goes to trial, regardless of the outcome of the trial. Goblisch argued that this policy denied him equal protection of the law because it discriminated against him on the basis of his decision to exercise a constitutional right, i.e., the right to a trial. By an order dated May 27, 1982, the county court denied Goblisch's motion and held that the commissioner's practice was constitutionally permissible.

Goblisch appealed the order to a three-judge panel of the Chaska County District Court. The panel reversed the county court, holding that the commissioner's policy was a violation of the Equal Protection Clause because it established a classification based on the desire to prevent defendants from exercising their constitutional right to trial. The district court dismissed the proposed implied consent revocation.

We believe the constitutional question raised by defendant need not be answered because the case can be decided on the basis of statutory construction. Some background discussion is necessary. In 1971, the implied consent statute only provided for revocation when a driver refused to provide a sample of his or her blood, breath, or urine for alcohol concentration testing. It was the commissioner's policy at that time to pursue implied consent revocations against all drivers who refused to provide a sample regardless of whether or

not they pled guilty to DWI. That policy was challenged in *State, Department of Highways v. Schlief*, 289 Minn. 461, 185 N.W.2d 274 (1971). In *Schlief*, we held that the commissioner could not revoke a driver's license for refusal to provide a sample when the driver had refused because he intended to plead guilty to DWI. We observed that the purpose of the implied consent statute was to facilitate gathering evidence for use in DWI prosecutions. When defendant pled guilty to DWI, there was no need for evidence and no further purpose could be served by enforcement of the implied consent statute. Since enforcement of the statute under these circumstances did not effectuate the intention of the legislature, we affirmed a lower court order rescinding the implied consent revocation.

We applied the same analysis used in *Schlief* to the case of *State, Department of Public Safety v. Mulvihill*, 303 Minn. 361, 227 N.W.2d 813 (1975). In *Mulvihill*, several defendants refused to provide samples for alcohol testing, then pled guilty to DWI charges that did not subject them to license revocation. They argued, from *Schlief*, that their guilty pleas precluded the commissioner from using the implied consent statute to revoke their licenses. To decide whether the commissioner could proceed, we again considered the purpose of implied consent revocation. We found that one of its purposes was to protect the public from persons who drive while intoxicated. That purpose was not satisfied by a plea of guilty which did not result in revocation so we allowed the commissioner to proceed under the implied consent statute. *Id.* at 367, 227 N.W.2d at 817.

After *Schlief* and *Mulvihill*, the commissioner established the policy of dropping implied consent revocation proceedings against defendants who pled guilty to DWI and had their licenses revoked, but not against defendants who went to trial. The policy was simply a recognition of our holdings in *Schlief* and *Mulvihill*.

The implied consent revocation proceedings in this case were not based on the refusal to provide a sample, but on the fact that the sample provided showed more than .10% alcohol. This provision was added to the implied consent statute in 1978, after *Schlief* and *Mulvihill* were decided. Thus, the question here is: When implied consent revocation is based on an alcohol concentration of .10% or more, is the commissioner's policy of dropping proceedings against defendants who plead guilty to DWI and have their licenses revoked consistent with our reasoning in *Schlief* and *Mulvihill?*

■ We think the legislature added this new language to assure that every person caught driving while their alcohol concentration measured .10% or more would lose his or her driver's license for a period of time. Prior to 1978, persons who gave a sample could not lose their license under the implied consent law no matter how much alcohol was in their system. In addition, it was possible for persons whose alcohol concentration exceeded .10% to avoid license revocation. For example, they might have the charges against them reduced through the process of plea negotiation. The additional language in the implied consent statute gives the commissioner a way to revoke the licenses of persons who might otherwise slip through this "loophole."

■ The purpose underlying this section of the implied consent statute would not be served by additional revocation after a defendant pleads guilty to DWI and has his or her license revoked. Therefore, implied consent revocation proceedings must be dismissed. *State, Department of Public Safety v. Schlief, supra*. The commissioner's policy of dismissing implied consent proceedings against defendants who plead guilty to DWI should not be construed as a form of discrimination against defendants who go to trial. Instead, it is a matter of dismissing claims that are barred as a matter of law.

■ However, the commissioner must treat one who goes to trial and is convicted of DWI in the same way as one who pleads

guilty and is convicted. A conviction and license revocation are the same in either case. In either case, the purpose of the implied consent statute has been fulfilled, and the implied consent proceedings must be dismissed. Defendant in this case went to trial, was convicted of DWI, and had his license revoked; therefore, the implied consent proceedings against him must be dismissed. Of course, if defendant had been acquitted or had not lost his driver's license, the commissioner would be free to proceed.

For the reasons stated in this opinion, the decision of the three-judge panel of the district court is affirmed.