**Earl STEINBRENNER,**
**Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

**No. C1-87-662.**

Court of Appeals of Minnesota.

Oct. 13, 1987.

Patrick O. Sogard, Robert J. LaBine & Associates, Grand Forks, N.D., for petitioner-appellant.

Hubert H. Humphrey, III, Atty. Gen., Jeffrey S. Bilcik, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by FOLEY, P.J., and PARKER and SEDGWICK, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

Appellant Earl Steinbrenner was arrested for driving while under the influence, and he refused to take an Intoxilyzer test. His driver's license was revoked for one year pursuant to the implied consent law, and he petitioned for judicial review. The trial court sustained the revocation, and Steinbrenner appeals. We affirm.

## FACTS

Officer Daniel Malinowski was on general patrol duty on February 4, 1987, at approximately 12:30 a.m. He saw a pickup truck being driven erratically, and he activated his red lights. The driver did not stop immediately, but made a right turn and pulled into a driveway behind the Steinbrenner residence.

The officer, who knew appellant, asked him to sit in his squad car. He could smell a strong odor of alcohol, and observed his poor balance. Malinowski told appellant he thought he had too much to drink and asked him to take a test at the station. At that time, Malinowski was of the opinion that appellant was under the influence, based on the odor of alcohol, his bloodshot watery eyes, his speech, and his balance. Appellant refused to go with Malinowski and left the squad car.

Malinowski testified that he followed appellant, but slipped on ice. Appellant went into his house and slammed the door in Malinowski's face; Malinowski then entered the home. Appellant first told Malinowski to leave, but then agreed Malinowski could go out to his squad car and return.

Malinowski testified that he did not tell appellant he was under arrest, but he believed the arrest occurred when appellant entered the squad car and was told to stop before he went into his house.

Appellant testified that when he got in Malinowski's squad car, Malinowski told him he thought appellant had been drinking all night, and he would like him to come down to the police station. He testified Malinowski did not place him under arrest,

and he did not feel he was under arrest. While he was in the squad car, appellant asked Malinowski if he could tell his wife what was happening. Malinowski did not say he could not, so he went into his home. Shortly afterward, the door opened, and Malinowski walked in.

Malinowski then returned to his squad car to call for backup and returned to appellant's house. As he entered, appellant was opening a can of beer. Two backup officers then arrived.

There was conflicting testimony as to how much beer appellant consumed. He testified that he drank three cans and a portion of a fourth. Appellant's wife corroborated that he drank some beer. The officers testified that he just had a few sips from two cans. The officers explained that while it is not normal procedure to allow a person stopped for DWI to drink beer, they did not restrain appellant from drinking the beer to avoid "amplifying" the situation.

Appellant eventually agreed to go to the police station. Malinowski read the implied consent advisory to appellant at 1:51 a.m., and he agreed to take a breath test. When the certified Intoxilyzer operator attempted to administer the test, appellant refused to take it. He testified that he did so because he knew he would not pass the test after drinking the beers at home.

Appellant's license was revoked for refusing testing, and he petitioned for judicial review. The trial court sustained the revocation and appellant brings this appeal.

## ISSUES

1. Was appellant's warrantless arrest lawful?

2. Was appellant's refusal to submit to testing reasonable because he consumed alcohol after the traffic stop?

## ANALYSIS

■ 1. Appellant first argues he was not arrested prior to the time that Malinowski entered his home, Malinowski's entry into his home was illegal because he did not consent and no exigent circumstances existed.

Malinowski had, prior to his entry into the house, formed the opinion that appellant was intoxicated, based upon his driving, the odor of alcohol on his breath, his bloodshot watery eyes, his speech, and his balance. These facts provide probable cause to believe appellant was driving while under the influence. We note that the fact that Malinowski did not perform field sobriety tests is not determinative. When there are other indicia of intoxication, such as those present here, the officer need not require the driver to perform field sobriety tests. *Holtz v. Commissioner of Public Safety*, 340 N.W.2d 363, 365 (Minn.Ct.App.1983).

The focus in this case should be whether the officer had probable cause to arrest, rather than on the exact moment in which the arrest occurred. The officer had set the arrest in motion when he stopped the vehicle, had appellant sit in his squad car and requested that he go to the station to take a test. In cases in which a warrantless entry into the home is made to arrest a fleeing suspect, the officers often will not have the opportunity to tell the suspect that he is under arrest. For example, in *Pahlen v. Commissioner of Public Safety*, 382 N.W.2d 552, 553 (Minn.Ct.App.1986), the officer pursued a speeding vehicle until it stopped, and then pursued the driver into his home and arrested him for DWI, speeding, and fleeing a police officer.

We must next address the issue of whether the warrantless entry into appellant's home was justified. In *United States v. Santana*, 427 U.S. 38, 43, 96 S.Ct. 2406, 2410, 49 L.Ed.2d 300 (1976), the supreme court held that "a suspect may not defeat an arrest which has been set in motion in a public place * * * by the expedient of escaping to a private place." *See also State v. Koziol*, 338 N.W.2d 47, 48 (Minn.1983); *Pahlen*, 382 N.W.2d at 553.

In this case, the driver had been stopped on a public street for erratic driving, and the officer had probable cause to believe he had been driving while under the influence. Appellant left the squad car and the officer pursued him. The warrantless entry was justified by the exigent circumstance of hot pursuit.

2. A driver may raise the issue of reasonable refusal as an affirmative defense in an implied consent proceeding, Minn. Stat. § 169.123, subd. 6 (1986). Appellant argues that his refusal was reasonable because he consumed a sufficient quantity of alcohol after the stop to affect the accuracy of the Intoxilyzer test result. The trial court, which was presented with sharply differing accounts as to how much beer appellant consumed, did not make a finding on this point. The trial court deemed it unnecessary to reach the issue, because it did not believe consumption of alcohol after a DWI stop provided a valid reason for refusal.

■ We agree with the trial court. While post-driving consumption of alcohol may be raised by the driver as an affirmative defense if the driver takes the test, *Dutcher v. Commissioner of Public Safety*, 406 N.W.2d 333, 336 (Minn.Ct.App. 1987), it may not be raised as a basis for a reasonable refusal. To allow such a defense would encourage drivers to drink after driving. Further, one purpose of the implied consent law is to obtain evidence. *See Goblisch v. Commissioner of Public Safety*, 348 N.W.2d 76, 78 (Minn.1984). It does not conform with the purposes of the implied consent law to allow a driver to avoid providing evidence by refusing on the grounds that he consumed alcohol after the driving.

### DECISION

The order of the trial court sustaining the revocation is affirmed.

Affirmed.