**STATE of Minnesota, Appellant,**

v.

**Jeremy Patrick WAGNER, Respondent.**

No. C9–01–903.

Court of Appeals of Minnesota.

Dec. 26, 2001.

Mike Hatch, Attorney General, St. Paul; and Christopher D. Karpan, Douglas County Attorney, Marcia G. Bremer, Assistant Douglas County Attorney, Douglas County Courthouse, Alexandria, for appellant.

John J. Kastner, Jr., Gerald Miller & Associates, P.A., Minneapolis, for respondent.

Considered and decided by RANDALL, Presiding Judge, AMUNDSON, Judge, and KLAPHAKE, Judge.

## OPINION

R.A. RANDALL, Judge.

The state challenges a pretrial order suppressing evidence of respondent's intoxication and dismissing the gross-misdemeanor driving-while-intoxicated complaint. The state argues (1) that the district court erred in ruling that the trooper, who saw respondent's vehicle drive on the shoulder of the road, then cross the center line, then speed up as if to evade the officer, did not have articulable suspicion supporting the stop; and (2) that the district court should have collaterally estopped respondent from challenging the legality of the stop when that issue was determined adversely at an earlier implied-consent proceeding. We affirm in part and reverse in part.

## FACTS

On July 2, 2000, at approximately 1:20 a.m., a state patrol trooper with 12 years of experience headed into the city of Kensington in a marked squad car upon the request of Douglas County. He was traveling southbound and about to enter Kensington when he observed a vehicle heading northbound. Just before the trooper met the vehicle, the vehicle drove onto the shoulder. As the vehicle continued northbound, the trooper watched the vehicle in his rearview mirror and observed the vehicle cross the center line. The trooper turned his patrol car around and attempted to catch up to the vehicle to see if that driving behavior continued. The trooper traveled approximately 80 to 90 miles per hour in an attempt to catch the vehicle, which was then quite a distance ahead of the trooper.

While the trooper attempted to catch the vehicle, the vehicle passed another car, then immediately braked and turned right. The trooper found the vehicle's evasive behavior suspicious and decided to investigate. The trooper followed the vehicle onto what he thought was a township road, but the road was actually a driveway. The trooper caught up to the vehicle in the half-mile-long driveway when the vehicle took the left side of a circle in the driveway and the trooper went around the right side.

The trooper identified the driver as respondent Jeremy Wagner. When the trooper went up to the car, he detected the scent of alcohol coming from the vehicle and then smelled alcohol on respondent's breath. Additionally, respondent exhibited signs of intoxication, including slurred speech and bloodshot eyes.

Respondent was subsequently arrested for DWI and his driver's license was revoked under Minnesota's implied consent law. In September 2000, respondent challenged the legality of the stop at an implied-consent hearing. The implied-consent court determined that the stop was legal and sustained respondent's driver's-license revocation.

Later, at a pretrial hearing in the DWI criminal proceeding, respondent again challenged the legality of the stop and moved to dismiss the complaint. The state argued that the court should apply collateral estoppel and prevent respondent from challenging the legality of the stop because the implied-consent court already determined that issue. The district court refused to apply collateral estoppel stating, "[T]his is a criminal case, and I think that he has a right to be heard."

Then the DWI court heard testimony about the circumstances surrounding the stop. On cross-examination, after the trooper testified that he observed the vehicle drive on the shoulder and cross the center line, the arresting officer was asked:

Q. And it was at that point, based on that traffic violation, you decided to turn around and initiate an investigatory stop, correct?

A. Well, I just—at that point I was just going to turn around just to, just to watch the driving behavior a little more, you know. I wasn't—I wasn't prepared just to stop him on that. I wanted to see what—if this continued.

\* \* \* \*

Q. Now, you've testified that at the point where this pickup truck crossed the center line you had not decided to stop that vehicle, correct?

A. Correct.

Q. And it was only after seeing Mr. Wagner's vehicle, after you crested the hill, that you decided to stop, actually investigate and stop him, correct?

A. Yeah, it was after, after it appeared that he was so far ahead of me and all of a sudden passed another vehicle and then braked to take a right turn, to me that was something that wasn't quite right, so it was, it was at that time that I decided that this one I was going to try and stop and find out what was going on.

Q. Okay. And, correct me if I'm wrong, so when you saw the vehicle brake hard and make the turn into the driveway, it was at that point that you decided you wanted to investigate, correct?

A. Correct.

Q. And it's because in your own words you wanted to see what was going on?

A. Yeah, there was—to me there was something wrong, I mean they were trying to hide something or trying to, to get away from me for some unknown reason. That, that's how it appeared to me.

Q. Okay. So really it was more the I guess evasive conduct than anything that kind of raised your suspicions?

A. Correct.

Based upon the trooper's testimony, the DWI court concluded that the trooper did not have specific articulable facts of wrongdoing to stop respondent and granted respondent's motion to dismiss. In the court's memorandum of law attached to the order, the court stated:

Trooper Ras testified that he did not have a reasonable suspicion to stop the pick-up truck the Defendant was driving after he saw the Defendant driving on the shoulder and then subsequently cross the center line. Because of this statement the Court must only look to the events that followed to decide the issue of the validity of the stop.

The court determined that the events following the vehicle crossing the center line did not warrant a stop and specifically

noted that all of respondent's actions after leaving Kensington were legal.

### ISSUES

I. Did the district court err in determining that the stop was not supported by reasonable, articulable suspicion?

II. Should collateral estoppel apply against a defendant in a criminal case when the same issue was unsuccessfully litigated at a prior implied-consent hearing?

### ANALYSIS

### I. Stop

■ The Fourth Amendment, which protects citizens from unreasonable searches and seizures, is implicated when a police officer stops a vehicle. *State v. Fiebke*, 554 N.W.2d 755, 756 (Minn.App. 1996). Police may

conduct limited stops to investigate suspected criminal activity when the police can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."

*State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)). The officer does not need probable cause for an investigatory stop, and does not need to detect an actual violation. *Marben v. State, Dep't of Pub. Safety*, 294 N.W.2d 697, 699 (Minn.1980). Following 1980, the threshold of "articulable suspicion" is a threshold, but less of a threshold than "probable cause."

■ When reviewing a district court's determination of the legality of a limited investigatory stop, an appellate court reviews questions of reasonable suspicion de novo. *Britton*, 604 N.W.2d at 87.

■ If the police officer has a "particularized and objective basis for suspecting the particular person stopped of criminal activity," the investigatory stop is valid. *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981) (citations omitted). All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity. *Marben*, 294 N.W.2d at 699; *see also State v. Claussen*, 353 N.W.2d 688, 690 (Minn. App.1984) (recognizing threshold required to stop vehicle to investigate potential wrongdoing is very low). A reviewing court considers the totality of the circumstances in determining whether the police had a reasonable basis justifying the stop. *Cortez*, 449 U.S. at 417, 101 S.Ct. at 695.

The state contends that the trooper engaged in a lawful traffic stop because the trooper observed respondent drive on the shoulder, cross the center line, and then exhibit evasive behavior. Based on driving from the shoulder, back across the center line, we agree.

■ When there is credible testimony that the driver actually crossed the center line, this court and the supreme court have uniformly found investigatory stops valid. *See, e.g., iState v. Richardson*, 622 N.W.2d 823, 825 (Minn.2001) (finding reasonable suspicion when vehicle crossed fog line and there was anonymous tip); *State v. Schinzing*, 342 N.W.2d 105, 106, 109 (Minn.1983) (holding objective basis for stop when vehicle did not display license plate, had object hanging from rearview mirror, and made wide turn and crossed center line); *State v. Bunde*, 556 N.W.2d 917, 919 (Minn.App. 1996) (finding reasonable suspicion when vehicle turned without signaling and crossed center line); *Shull v. Comm'r of Pub. Safety*, 398 N.W.2d 11, 14 (Minn.App. 1986) (finding reasonable suspicion when driver drove slower than necessary and crossed center line). "Ordinarily, if an officer observes a violation of a traffic law, however insignificant, the officer has an

objective basis for stopping the vehicle." *State v. George*, 557 N.W.2d 575, 578 (Minn.1997) (citations omitted). And Minn.Stat. § 169.18, subd. 7(a) (2000), provides that a "vehicle shall be driven as nearly as practicable entirely within a single lane." Crossing the center line is a violation of the traffic laws and will usually provide the officer with an objective, reasonable suspicion to conduct an investigatory stop. Here, respondent crossed the center line and drove on the shoulder. The trooper had an objective, reasonable, and articulable basis for the stop.

▆▆▆ We do not criticize the district court for giving deference to the trooper's experience. *See Richardson*, 622 N.W.2d at 825 (acknowledging that trained law-enforcement officers are permitted to make inferences and deductions that would be beyond competence of untrained person). Whenever a defendant driver appeals a stop case, the prosecuting attorney always "hammers home" the point that the officer on the street has the ability to draw inferences that the average layperson may not and that great deference should be shown to the officer's experience. Further, when the district court hears testimony on the legality of investigatory stops, the district court's factual findings are entitled to deference. *State v. Shellito*, 594 N.W.2d 182, 186 (Minn.App.1999) (findings of fact reviewed under clearly erroneous standard). But on appeal, a reviewing court determines, as a matter of law, whether an officer's observations provided an adequate and objective basis for the stop. *Berge v. Comm'r of Pub. Safety*, 374 N.W.2d 730, 732 (Minn.1985).

The key to our analysis is that while a law-enforcement officer's opinion of his stop, while having some weight, cannot be determinative, just as a law-enforcement officer's opinion that he had enough evidence for a valid stop is not determinative. That final decision belongs to a neutral and independent judiciary. Here, the district court decided it could only look at the evidence gathered at the last minute, the passing of a car, the braking, and the turning into a driveway.[1] That was erroneous. The district court was entitled to look at all of respondent's conduct, even though the trooper did not stop respondent immediately after respondent crossed the center line. *See Cortez*, 449 U.S. at 417, 101 S.Ct. at 695 (stating reasonable suspicion determined by totality of circumstances).

We conclude that the district court erred when it determined that it could not consider any of respondent's driving conduct that occurred before the trooper's subjective thought that he wanted to observe the driver go a little farther because he might not have enough evidence at that point to make a stop. Here, the trooper observed respondent drive on the shoulder, cross the center line, and then speed up and turn sharply. The totality of the circumstances establishes that the trooper had an objective and a reasonable suspicion to stop the vehicle.

## II. Collateral Estoppel

▆▆▆ This court applies "de novo review to questions of collateral estoppel."

---

1. The district focused on the trooper's statement:

   Well, I just—at that point I was just going to turn around just to, just to watch the driving behavior a little more, you know. I wasn't—I wasn't prepared just to stop him on that. I wanted to see what—if this continued.

From that testimony, the district court concluded that "because of this statement the Court must only look to the events that followed to decide the issue of the validity of the stop."

*G.A.W., III v. D.M.W.,* 596 N.W.2d 284, 287 (Minn.App.1999) (citations omitted), *review denied* (Minn. Sept. 28, 1999). Collateral estoppel is "a form of res judicata whereby a former judgment is conclusive in a later suit between the same parties or their privies." *Matter of Congdon's Estate,* 309 N.W.2d 261, 271 (Minn.1981) (emphasis omitted) (citation omitted). Collateral estoppel is appropriate where

> (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Willems v. Comm'r of Pub. Safety,* 333 N.W.2d 619, 621 (Minn.1983) (quotation and citations omitted). Courts use collateral estoppel "to prevent parties to an action from relitigating in subsequent actions issues that were determined in the prior action." *N.W. Nat. Life Ins. Co. v. County of Hennepin,* 572 N.W.2d 51, 53 (Minn.1997) (quotation omitted). "As a flexible doctrine, the focus is on whether its application would work an injustice on the party against whom estoppel is urged." *Johnson v. Consol. Freightways, Inc.,* 420 N.W.2d 608, 613–14 (Minn.1988) (citation omitted).

The state contends that because the implied-consent court previously determined the stop was valid, respondent is collaterally estopped from arguing in a later DWI hearing that the trooper's stop of respondent's vehicle was illegal. We disagree.

▪ First, while the issues litigated in the criminal, and the implied-consent proceedings appear alike, they are not identical. The DWI is criminal and the implied consent is civil. It is settled that implied-consent proceedings are civil in nature. *State, Dep't of Pub. Safety v. Mulvihill,* 303 Minn. 361, 368, 227 N.W.2d 813, 818

(1975); *State, Dep't of Pub. Safety v. House,* 291 Minn. 424, 425, 192 N.W.2d 93, 94 (1971); *State v. Nelson,* 608 N.W.2d 913, 915 (Minn.App.2000), *review denied* (Minn. June 27, 2000). A criminal DWI proceeding and an implied-consent proceeding are "related only to the extent that they both generally grow out of the same set of facts." *House,* 291 Minn. at 425, 192 N.W.2d at 94–95.

Second, the criminal defendant and the petitioner in the implied-consent proceeding are the same person but with different interests at stake. While a petitioner in an implied-consent proceeding has only his driving privileges at stake, a criminal defendant has a fundamental liberty interest at stake. *See* Minn.Stat. §§ 169A.50–.53 (2000) (implied consent); Minn.Stat. §§ 169A.20, .25, .275 (2000) (criminal). The implied-consent-hearing petitioner may not have the same incentive to fully litigate issues at the implied-consent hearing. A petitioner might reasonably decide to conserve his available resources to challenge issues arising at the criminal proceeding where his liberty is at stake, thus resulting in less than a "fully litigated" issue at the implied-consent proceeding.

▪ Third, because the implied-consent proceeding is civil, presumptions, burdens of proof, and evidentiary rules are different from a criminal proceeding. It would be fundamentally unfair to bind a defendant in a criminal proceeding to rulings based on an earlier civil hearing with lower standards. In criminal proceedings the state's burden of proof is beyond a reasonable doubt. In implied-consent proceedings, the commissioner's burden of proof is simply by a preponderance of the evidence. *Johnson v. Comm'r of Pub. Safety,* 392 N.W.2d 359, 362 (Minn.App. 1986). The civil nature of the implied-consent proceeding means the defendant is not entitled to all the substantive constitutional rights associated with criminal mat-

ters. For example, only the criminal defendant has a right to a trial, a right against self-incrimination, a right to a hearing to determine probable cause, and a right to a hearing to determine the legality of the seizure or admissibility of evidence. Unlike criminal proceedings, the due-process right to potentially exculpatory evidence does not extend to civil implied-consent proceedings. *Hartung v. Comm'r of Pub. Safety,* 634 N.W.2d 735, 738–39 (Minn.App.2001).

It is elementary fundamental justice that the only presumption in criminal law is the presumption of innocence. *See Taylor v. Kentucky,* 436 U.S. 478, 483, 98 S.Ct. 1930, 1933, 56 L.Ed.2d 468 (1978) (recognizing that "[t]he principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law" (quotation omitted)). The "presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Id.* at 479, 98 S.Ct. at 1931 (quotation omitted). In Minnesota, the presumption of innocence is a fundamental right. *Boutin v. LaFleur,* 591 N.W.2d 711, 717 (Minn. 1999); *see also State v. Kelly,* 218 Minn. 247, 257, 15 N.W.2d 554, 560 (1944). Likewise, proof beyond a reasonable doubt is "as much a part of the constitution as though expressly set out." *Kelly,* 218 Minn. at 257, 15 N.W.2d at 560 (citation omitted). But these fundamental rights only apply "to statutes which are punitive, or criminal, in nature." *Boutin,* 591 N.W.2d at 717 (citation omitted).

This court is not about to rule that when a defendant loses at a civil implied-consent hearing, the incriminating evidence is "presumed admissible" at a later criminal proceeding, and the defendant is prevented from contesting a part of the state's criminal case. A criminal defendant is presumed innocent and has the right to contest every essential element of the crime. The state has the strict burden of proof beyond a reasonable doubt. If this were not the law, evidentiary rulings in civil cases that happen to come before the criminal case would permanently bind a criminal defendant to civil evidentiary rulings in cases where different liberties are at stake. That has never been the law. A state "cannot use the result in a civil proceeding to bind a criminal defendant on any element of a crime as a matter of collateral estoppel." *McKinney v. Alabama,* 424 U.S. 669, 689 n. 5, 96 S.Ct. 1189, 1200 n. 5, 47 L.Ed.2d 387 (1976) (Brennan, J., concurring) (emphasis omitted).

The state relies on this court's recent opinion, *State v. Victorsen,* 627 N.W.2d 655 (Minn.App.2001), to support its assertion. In *Victorsen,* the implied-consent court found that a traffic stop was illegal, but the DWI court later found that the stop was legal and supported by a reasonable suspicion of criminal conduct. *Id.* at 659–60. This court concluded that collateral estoppel applies against the county or city prosecutor in a DWI proceeding when the validity of the stop has been contested in the implied-consent hearing and the county or city prosecutor has notice of the Rasmussen hearing. *Id.* at 662–63. *Victorsen* expressly limited the decision *to prosecutors* in a DWI proceeding and recognized the fundamental problem with applying collateral estoppel to defendants:

> We recognize that, under the current scheme, implied consent hearings and criminal pretrial hearings do not always involve the same evidence. For example, drivers in civil implied consent proceedings may assert the privilege against self-incrimination if it can be reasonably apprehended that the statements could be used against them in a

criminal prosecution. But in a criminal pretrial hearing, this privilege is not available because the defendant does not waive the constitutional right against self-incrimination by testifying. Therefore, even if the estopped party, the facts and the issue remain the same, this difference in evidentiary rules might prevent a defendant from receiving a full and fair opportunity to be heard on the adjudicated issue. *For that reason, we decline to determine today whether a criminal defendant may be collaterally estopped from challenging the legality of a stop when, in a prior implied consent hearing, the court determined that it was legal.*

*Id.* at 662 n. 1 (emphasis added) (citations omitted). *Victorsen* is persuasive for the principle for which it stands: the state may be bound at the civil implied-consent hearing by evidentiary rulings under the principals of collateral estoppel and res judicata. That does not mean the reverse, as to criminal defendants, is true.

> [A] criminal conviction necessarily establishes that the requirement of a greater degree of proof has been met and * * * the party bound by it had every opportunity and incentive to litigate the issue.

*Travelers Ins. Co. v. Thompson,* 281 Minn. 547, 552, 163 N.W.2d 289, 293 (1968) (citations omitted). The United States Supreme Court has recognized that differences "in the burden of proof in criminal and civil cases precludes application of the doctrine of collateral estoppel." *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 235, 93 S.Ct. 489, 492, 34 L.Ed.2d 438 (1972) (holding civil action for forfeiture was not barred by owner's prior acquittal of failure to comply with customs procedures). Additionally, although exceptions have been carved out from the general common-law rule that "a criminal judgment is not admissible as evidence in a civil action to establish a fact determined in the criminal action," *Travelers,* 281 Minn. at 551, 163 N.W.2d at 292 (citations omitted), the law has never supported the proposition that a criminal defendant is bound by an earlier civil proceeding, *McKinney,* 424 U.S. at 689 n. 5, 96 S.Ct. at 1200 n. 5.

The district court correctly concluded that respondent was not collaterally estopped from challenging the validity of the stop in this criminal proceeding even though he unsuccessfully litigated that issue in an earlier implied-consent civil proceeding.

## DECISION

The district court erred in determining that the trooper did not have reasonable suspicion for the stop because the court did not consider respondent's earlier driving behavior. The district court correctly refused to apply collateral estoppel against respondent.

**Affirmed in part, reversed in part.**