STATE of Minnesota, Commissioner of Public Safety, Appellant,

v.

Scott Alan HANSON, Respondent.

No. C7–83–818.

Supreme Court of Minnesota.

Nov. 2, 1984.

Hubert H. Humphrey, III, Atty. Gen., Linda F. Close, Joel A. Watne, Asst. Attys. Gen., St. Paul, for appellant.

Roy A. Schwappach, Minneapolis, for respondent.

YETKA, Justice.

This is an appeal by the Commissioner of Public Safety from an order of the Scott County District Court reinstating, in a criminal proceeding under Minn.Stat. § 169.121 (1982), Scott Alan Hanson's driving privileges which the commissioner had revoked pursuant to section 169.123 for failure to submit to blood alcohol testing and "cancelled" pursuant to sections 171.-04(8) and 171.14 on the ground that allowing him to drive would be "inimical to public safety or welfare." The commissioner challenges the order on a number of grounds, including that it was improper for the district court to decide the issue in a

criminal proceeding to which the commissioner was not a named party. We reverse.

At 1:15 a.m. on December 11, 1982, a state trooper, Robert Borner, was riding in a squad car driven by another trooper, Al Smith, eastbound on Highway 101 at Fuller in Shakopee when he saw Hanson and a companion walking west on the sidewalk in front of a restaurant towards a pickup truck, the truck being the only vehicle parked in the vicinity. Hanson "showed obvious and extreme balance and coordination difficulty to the extent of staggering." Borner directed Smith to drive around the block to make their presence known to Hanson in the hope that he would not drive. As they approached First and Fuller from the south, they saw that Hanson was already driving the truck. They followed the truck southbound on Fuller, then eastbound on Third. While eastbound on Third, Hanson drove down the center of the road, weaving very slowly back and forth. Hanson turned north on Summerville, drove one-half of a block, then turned east and parked in a parking lot.

His breath smelled of alcohol, his speech was somewhat slurred, and his eyes were bloodshot. He failed a preliminary screening test. Believing that Hanson was under the influence of alcohol, Trooper Borner placed him under arrest for DWI. After being read the implied consent advisory and after consulting with an attorney, Hanson refused to submit to a blood alcohol test. Hanson failed four formal coordination tests. Trooper Borner served Hanson with a notice and order of revocation under Minn.Stat. § 169.123, subd. 5a, effective December 18, 1982.

On December 13, the Shakopee City Attorney filed a complaint charging Hanson with aggravated DWI. Minn.Stat. § 169.-121, subd. 3(a) (1982) (violation of section 169.121 within 5 years of a prior conviction).

On December 27, Hanson requested a limited license for work purposes from the commissioner. That same day, the commissioner denied this request and also advised Hanson of an impending order "cancelling" his driving privileges. Hanson requested administrative review of the revocation; that review was completed on January 5 with the commissioner affirming the revocation. On January 7, the commissioner issued an order cancelling Hanson's driving privileges on the ground that allowing him to drive would be "inimical to public safety." Minn.Stat. §§ 171.04(8) and 171.14 (1982). The court based this cancellation on Hanson's record of three alcohol-related driving incidents within 5 years (the December 11, 1982, refusal to test; a DWI conviction in 1980; and an implied consent revocation in 1979 resulting from Hanson's submitting to a test showing that he had a blood alcohol concentration of .13 [1]). Hanson never requested judicial review pursuant to Minn.Stat. § 169.123, subd. 5c of the implied consent revocation. The final day on which he could have made such a request was January 10, 1983. Similarly, he never filed a petition pursuant to section 171.19 for reinstatement of his driving privileges.

On March 10, 1983, an omnibus hearing was held in connection with the criminal prosecution arising from the December 11 incident. The state was represented at the hearing by the Shakopee City Attorney. Following the hearing, the trial court, without making any findings of fact, dismissed the complaint, stating that there was no probable cause for the arrest. In a memorandum explaining its decision, the court stated:

The complainant stated he saw the defendant and his companion walking west on the sidewalk near Wampach's Restaurant at 1:15 a.m. when he was riding in his squad on Highway 169 heading east. He said that he noticed the defendant was staggering and having difficulty with his balance so he drove around the block to make his presence known to the defendant in the hope that he would not

---

**1.** The 1979 revocation was properly part of Hanson's record even though he ultimately was acquitted of a DWI charge resulting from the same incident.

drive. The thought occurs to the Court that if this really were the complainant's motivation, he would have driven through the alley rather than drive around the entire block. That way, he would have driven half the distance in half the time and would have stood a better chance of meeting the defendant or being viewed by the defendant before the defendant got in his car.

Thereafter, defendant's attorney, citing the dismissal of the criminal charge, tried to persuade the commissioner to reinstate Hanson's driving privileges. The commissioner refused to do so. On April 21, defense counsel served notice of motion and motion upon the commissioner, informing the commissioner that, on April 29, at a hearing to be held before the same judge as part of the aggravated DWI proceeding, he would move the court for an order compelling the "plaintiff" (*i.e.*, the state) to reinstate Hanson's driving privileges based upon the files, records and proceedings in the aggravated DWI prosecution and the oral argument of counsel. Following that hearing, the court issued an order directing the commissioner to "reinstate" Hanson's license. In an attached memorandum, the court stated:

> On December 11, 1982, defendant was charged with a gross misdemeanor DWI under M.S. sec 169.121(3)a. On March 30, 1983 this Court found there was no probable cause to support the charges and dismissed the complaint. The defendant then requested reinstatement of his license (which had been revoked under M.S. sec 169.123), but this was denied because the December 11, 1982, incident was defendant's third DWI in five years. However, one of the three "DWI incidents", the one on March 17, 1979, was decertified by Court Order of January 21, 1980, yet that incident was used by the department, together with the December 11, 1982, incident above referred to, to arrive at the three incidents in five years required by the Statutes and by the Commissioner's regulations.
>
> This Court has always been of the opinion that it is the duty of the Courts

of this nation to protect its citizens from excesses on the part of their government, and in this Court's view the facts of this case present a classic example of such an excess. The Court holds that the Commissioner's refusal to issue a limited license to the defendant under the facts of this case was a flagrant abuse of discretion and hence the ruling.

▆▆▆ As we have made clear in a number of cases the revocation of a driver's license under the implied consent law, is a civil penalty imposed administratively regardless of the outcome of any criminal proceeding under section 169.121 arising from the same incident. *See, e.g., State, Dept. of Public Safety v. Mulvihill,* 303 Minn. 361, 227 N.W.2d 813 (1975). Two things follow from this. First, the fact that Hanson was acquitted of the criminal charge arising from the 1979 incident does not render the prior implied consent revocation based on the same incident invalid. Second, the fact that the trial court dismissed the criminal charge based on the December 11, 1982 incident—whether or not the court was correct in doing so—does not render the December 18 implied consent revocation based on the incident invalid.

▆▆▆ Formerly, there were two ways for a driver to challenge an implied consent revocation: by seeking a revocation hearing, Minn.Stat. § 169.123, subd. 5 (1980), or by petitioning for reinstatement, Minn.Stat. § 171.19 (1980); *McIntee v. State, Dept. of Public Safety,* 279 N.W.2d 817, 821 (Minn. 1979). In 1982, the legislature amended section 171.19 so that the reinstatement procedure may not be used to challenge a revocation under section 169.123. Act of March 19, 1982, ch. 423, § 11, 1982 Minn. Laws 288, 299; *Willems v. Commissioner of Public Safety,* 333 N.W.2d 619, 621 (Minn.1983). Thus, Hanson's failure to seek judicial review of his implied consent revocation resulted in the forfeiture of his right to a judicial revocation hearing.

▆▆▆ Under Minnesota's implied consent law, an implied consent revocation hearing

"may be conducted at the same time * * * as [the hearing] upon pretrial motions in the prosecution under section 169.121, if any." Minn.Stat. § 169.123 (1982). By the time that the pretrial hearing was held in the criminal prosecution of petitioner, however, the petitioner had already lost his right to an implied consent revocation hearing. In any event, the commissioner was not a party to the criminal prosecution of Hanson, did not participate in the omnibus hearing and, as a nonparty, had no right to appeal the dismissal, which arguably was an erroneous dismissal.[2]

 As a result of a 1982 amendment, the district court no longer has broad authority to order the commissioner to issue a limited license. *Pruszinske v. State, Comm'r of Highways,* 330 N.W.2d 887, 889 n. 1 (Minn.1983). However, in the case of an abuse of discretion by the commissioner in refusing to issue a limited license under Minn.Stat. § 171.30, the court would be authorized to order the commissioner to issue a limited license. Similarly, in the case of an abuse of discretion by the commissioner in refusing to reinstate under Minn.Stat. § 171.19, the court would have authority to order the commissioner to reinstate a driver's license.

In this case, Hanson never filed a petition for reinstatement under Minn.Stat. § 171.19; instead, he raised the issue of reinstatement by motion in the criminal proceeding to which the commissioner was not a party. This is not allowed. If Hanson had filed a petition for reinstatement, the matter might or might not have been assigned to the trial judge who handled the criminal proceeding. As it was, Hanson, having already obtained a favorable ruling from the judge on the criminal matter, was able to select the same judge to decide the civil reinstatement matter. Further, by doing it as he did, Hanson was able to avoid compliance with the procedural requirements of Minn.Stat. § 171.19.

**2.** *See State v. Kvam,* 336 N.W.2d 525 (Minn. 1983) (reversing an erroneous dismissal of an

Apart from the procedural impropriety of deciding a matter that was not properly before him, the trial court decided the matter incorrectly on the merits. The trial court apparently concluded that the commissioner could not rely on the 1979 implied consent revocation and the 1982 implied consent revocation even though, as we have pointed out, the commissioner clearly could rely on them. Considering Hanson's three alcohol-related driving incidents in a 5-year period and believing that the commissioner's policy of cancelling the license of any driver with such a record is a valid policy, we conclude that the court's order was wrong on the merits also.

Reversed.

aggravated DWI prosecution).