**Donald James HINTZ, Petitioner, Respondent,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Appellant.**

No. C0–84–1948.

Court of Appeals of Minnesota.

March 19, 1985.

Review Denied May 20, 1985.

James E. Ostgard, II, St. Paul, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Considered and decided by POPOVICH, C.J., and WOZNIAK and SEDGWICK, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

The Commissioner of Public Safety appealed from an order of the trial court vacating the denial of respondent's driving privileges and ordering the issuance of a limited license for work-related driving. We reverse.

## FACTS

On September 24, 1983, respondent Donald Hintz was charged with his sixth D.W.I. violation, and refused testing. The Commissioner of Public Safety began procedures to revoke, Minn.Stat. § 169.123, cancel, Minn.Stat. § 171.14, and indefinitely deny, Minn.Stat. § 171.04(8), Hintz's driving privileges. Hintz was told of the rehabilitation requirements and was told in

light of his record he would have to demonstrate satisfactory completion of an alcohol abuse treatment program and not less than three years of verified total abstinence before he could obtain any driving privileges. The Commissioner of Public Safety denied Hintz's application for a limited license.

On December 19, 1983, Hintz pleaded guilty to D.W.I. gross misdemeanor arising out of the September 24 incident. The Commissioner of Public Safety then revoked all driving privileges for not less than two years, Minn.Stat. § 169.121, subd. 4(d), and denied driving privileges, Minn. Stat. § 171.04(8), until rehabilitation was demonstrated.

Hintz moved the trial court for a limited license, asserting that he needs to drive to maintain his job as a heavy equipment operator. The trial court found, among other things:

> The Commissioner has failed to take into consideration the unique features of the pattern of petitioner's prior convictions, his unique needs for the privilege of operating heavy equipment for his job, the importance in petitioner's case of employment as a chemical dependency treatment device and aid in his recovery, and the availability of less harsh alternatives to a standard Limited License, such as a license which limits him to the operation of heavy equipment, and denies him the privilege of operating any vehicle on a public street or highway.
> In failing to consider these and in view of the fact that Petitioner is continuing with his chemical treatment program, and is given good chances of success, and the fact that the petitioner will almost certainly lose his job without some form of license for operating his equipment, the Commissioner has acted arbitrarily and capriciously in denying the Limited License to petitioner.

The trial court granted Hintz's petition and ordered that, upon a showing that he is making satisfactory progress in his chemical dependency treatment program, the Commissioner of Public Safety shall issue a work-related limited license.

## ISSUE

Did the trial court err in ordering the Commissioner of Public Safety to issue respondent a limited license?

## ANALYSIS

Minn.Stat. § 169.121, subd. 4 (1982), provides in part:

> A person convicted of violating this section shall have his driver's license or operating privileges revoked by the commissioner of public safety as follows:
>
> \*   \*   \*   \*   \*   \*
>
> (d) Fourth or subsequent offense on the record: not less than two years, together with denial under section 171.04, clause (8), until rehabilitation is established in accordance with standards established by the commissioner.

Minn.Stat. § 171.04 (1982) states:

> The department shall not issue a driver's license hereunder;
>
> \*   \*   \*   \*   \*   \*
>
> (8) To any person when the commissioner has good cause to believe that the operation of a motor vehicle on the highways by such person would be inimical to public safety or welfare.

Clearly a limited license is a license for these purposes. *See* Minn.Stat. § 171.01, subd. 14 (1982).

Assuming Hintz's request for a limited license is a petition for reinstatement, *State v. Hanson,* 356 N.W.2d 689 (Minn. 1984); *Byrd v. Commissioner of Public Safety,* 348 N.W.2d 402 (Minn.Ct.App. 1984), *see Pruszinske v. State, Commissioner of Highways,* 330 N.W.2d 887 (Minn. 1983), he had the burden of showing that the Commissioner's action in refusing a limited license exceeded his authority and constituted an abuse of discretion. *McIntee v. State, Department of Public Safety,* 279 N.W.2d 817, 821 (Minn.1979).

The Commissioner initially argues that the concept of limited licenses, Minn.Stat. § 171.30, subd. 1, is inapplicable to drivers whose licenses have been cancelled under

Minn.Stat. § 169.121, subd. 4, and 171.-04(8). Minn.Stat. § 171.30 provides:

Subdivision 1. In any case where a person's license has been suspended under section 171.18 or revoked under sections 169.121, 169.123, or 171.17, the commissioner may at his own discretion issue a limited license to the driver including under the following conditions:

(1) if the driver's livelihood or attendance at a chemical dependency treatment or counseling program depends upon the use of his driver's license; or

(2) if attendance at a post-secondary institution of education by an enrolled student of that institution depends upon the use of the driver's license.

The commissioner in issuing a limited license may impose such conditions and limitations as in his judgment are necessary to the interests of the public safety and welfare including re-examination as to the driver's qualifications. The license may be limited to the operation of particular vehicles, to particular classes and times of operation and to particular conditions of traffic. The commissioner may require that an applicant for a limited license affirmatively demonstrate that use of public transportation or carpooling as an alternative to a limited license would be a significant hardship.

The limited license issued by the commissioner shall clearly indicate the limitations imposed and the driver operating under the limited license shall have the license in his possession at all times when operating as a driver.

In determining whether to issue a limited license, the commissioner shall consider the number and the seriousness of prior convictions and the entire driving record of the driver and shall consider the number of miles driven by the driver annually.

Subd. 2. A limited license shall not be issued for a period of 60 days to an individual who has had his license or privilege revoked or suspended for commission of the following offenses:

(a) Manslaughter or criminal negligence resulting from the operation of a motor vehicle.

(b) any felony in the commission of which a motor vehicle was used.

(c) Failure to stop and disclose identity as required under the laws of this state, in the event of a motor vehicle accident resulting in the death or personal injury of another.

Subd. 3. The commissioner shall issue a limited license restricted to the vehicles whose operation is permitted only under a Class A or Class B license whenever a Class A or Class B license has been suspended under section 171.18, or revoked under section 171.17, for violation of the highway traffic regulation act committed in a private passenger motor vehicle. This subdivision shall not apply to any persons described in section 171.04, clauses (4), (5), (6) and (9).

On the face of this statute, the Commissioner's argument is persuasive because the explicit language of § 171.30, subd. 1 refers to suspensions or revocations, not denials. This statute was enacted in 1978, see 1978 Minnesota Laws, ch. 727, § 10, four years before the denial provision in § 169.121, subd. 4(d).

The Commissioner's interpretation is buttressed by rules promulgated by the Commissioner of Public Safety under the authority of Minn.Stat. § 169.128. Under Minnesota Rules 7412.0400(E), a driver with a fourth or subsequent D.W.I. conviction shall have his license "revoked and suspended until one year after surrender of the license certificate to the commissioner; and also denied under Minnesota Statutes, section 171.04, clause (8), until such time as rehabilitation has been established in accordance with item C. The rules also discuss limited licenses in Minnesota Rules 7412.-1100. Subpart 1 entitled "Revocations Under Minnesota Statutes, sections 169.121 and 171.17, clause (2)" states:

Limited licenses may be issued to qualified applicants under authority of Minnesota Statutes, section 171.30. Such license shall be issued only for employ-

ment purposes (driving to and from an existing remunerative job or on the job), and for attendance at chemical dependency treatment or counselling programs. Before a limited license may be issued, the person must pass the complete driver's license examination, paying the fee required therefor; make application for a new license, paying the fee required for the class of license involved; and complete an alcohol problem assessment interview, either through the court or the department.

Subpart 2, entitled "Revocations Under Minnesota Statutes, section 169.123" states:

Limited licenses may be issued to qualified applicants under authority of Minnesota Statutes, section 169.123, subdivision 9.

\* \* \* \* \* \*

If the revocation relates to the fourth or subsequent violation on the licensee's record, no limited license may be issued. All driving privileges shall be denied under authority of Minnesota Statutes, section 171.04, clause (8), until such time as rehabilitation has been established as provided in part 7412.0400.

■ It seems obvious that the rules regulating limited licenses for revocations under Minn.Stat. § 169.123 were intended to track the requirements of Minn.Stat. § 169.121, subd. 4(d). It is incongruous that the harsh procedures following a fourth or subsequent § 169.123 violation would not likewise apply to one with a fourth or subsequent D.W.I. conviction under § 169.121.

Hintz relies on *Pruszinske v. State, Commissioner of Highways*, 330 N.W.2d 887 (Minn.1983). In *Pruszinske* the supreme court rejected an almost identical argument made by the Commissioner in this case when the court held:

We do not agree with the commissioner's interpretation of section 171.30 because, if a driver whose license has been "canceled" pursuant to section 171.14 and 171.04 is in a different category, to which section 171.30 does not apply, then the

legislature would not have felt obliged to explicitly state that the provisions of subdivision 3 of section 171.30 "shall not apply to any persons described in Minnesota Statutes Section 171.04, Clauses (4), (5), (6) and (9)".

*Id.* at 889–90.

However, *Pruszinske* is not controlling. *Pruszinske* did not address the impact of the new mandatory denial of licenses reflected in Minn.Stat. § 169.121, subd. 4(d), because *Pruszinske* was not governed by the 1982 legislative amendments.

■ Even if *Pruszinske* were applicable, the trial court's order cannot be sustained. The Commissioner of Public Safety's policy against issuing a limited license, regardless of the need for such a license or hardship caused by not granting such a license, is not an abuse of discretion in this case. As the supreme court stated in *Pruszinske*, in reversing the trial court's order of a limited license:

In other words, in all cases in the category in which Pruszinske finds himself, [third D.W.I. offense within five years] the commissioner has a policy against issuing a limited license, regardless of the need for such a license or the hardship caused by not granting such a license. Without implying that following this policy will never constitute an abuse of the discretion given the commissioner by the legislature, we simply hold that following the policy in this case did not constitute an abuse of discretion.

*Pruszinske*, 330 N.W.2d at 890.

Similarly in *Hanson*, in reversing an order of the trial court reinstating driving privileges, the supreme court said:

Considering Hanson's three alcohol-related driving incidents in a five-year period and believing that the commissioner's policy of cancelling the license of any driver with such a record is valid policy, we conclude that the court's order was wrong on the merits also.

*Hanson*, 356 N.W.2d at 693.

If it is a valid policy to cancel driving privileges for three alcohol-related inci-

dents within a five-year period, it must be a valid policy to cancel where, as here, respondent has six D.W.I. convictions.

It bears emphasizing that the determination to issue, revoke or cancel driving privileges rests with the Commissioner of Public Safety, Minn.Stat. § 171.25, not with the trial court. This authority, however, is subject to review to determine whether the Commissioner's action exceeded his authority or constituted an abuse of discretion. *State v. Moseng*, 254 Minn. 263, 95 N.W.2d 6 (1959).

We also note that in its Conclusions of Law, without citing any authority, the trial court stated that it was not bound by any presumption of regularity or correctness concerning decisions by the Commissioner of Public Safety regarding limited licenses due to the exemption of the Commissioner of Public Safety from the Minnesota Administrative Procedure Act. This conclusion is contrary to law, as discussed in our decision in *Antl v. State, Department of Public Safety*, 353 N.W.2d 240 (Minn.Ct.App.1984).

### DECISION

The trial court erred in ordering the Commissioner of Public Safety to issue respondent a limited license.

Reversed.