Richard Allen CARLSON,
Petitioner, Respondent,

v.

COMMISSIONER OF PUBLIC
SAFETY, Appellant.

No. C4-85-876.

Court of Appeals of Minnesota.

Oct. 8, 1985.

Ralph S. Palmer, Roseville, for respondent.

Hubert H. Humphrey, III, Atty. Gen., M. Jacqueline Regis, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Heard, considered and decided by LANSING, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

RANDALL, Judge.

The Commissioner revoked respondent's driving privileges for refusal to submit to testing. Respondent petitioned for judicial review and, after a hearing, the trial court rescinded the revocation. The Commissioner appeals, and we affirm.

## FACTS

Officer James Sewald (Sewald) stopped respondent Richard Carlson (respondent) after observing respondent's motor vehicle weaving on the road. Sewald detected an odor of alcohol, and observed that respondent's eyes were glassy, watery looking and his speech was slightly slurred. Sewald offered respondent a preliminary breath test. Initially respondent did not blow long enough or hard enough for his breath to register. Sewald testified that he believed respondent was not really trying at the start. Respondent kept trying and eventually blew hard enough into the machine, and it registered a "fail."

The officer concluded respondent was driving while intoxicated and placed him under arrest. He then transported respondent to the Eagan Police Station, read him the implied consent advisory, and requested that respondent submit to a breath test.

Officer Richard Swanson (Swanson), a certified Intoxilyzer operator, administered the Intoxilyzer test to respondent. Swanson advised respondent that he would have to blow hard enough to produce a tone on the Intoxilyzer, and then continue blowing for six or seven seconds to obtain an adequate sample.

On the first test, respondent blew at least 12 times; only once did he blow hard enough to make the tone sound, and then he did not blow long enough to complete an adequate sample. The machine allows four minutes to provide the first sample; respondent did not blow hard enough, and the instrument registered that he gave a deficient sample. For the second test, Swanson testified that respondent put his mouth on the unit 8 to 10 times, but did not blow on it. Swanson testified that he did not believe respondent was trying to give a proper sample, and that he did not appear ill.

Respondent testified that Swanson told him he was not blowing hard enough and that, if he didn't blow harder, it could be considered a refusal. Respondent said he was blowing absolutely as hard as he could:

I did cooperate, believe me, 100 per cent and I said, I am not refusing the test. Give me a blood test or give me a urine test, I don't care what. I am not refusing the test.

It is not disputed that respondent volunteered for either alternative test but that Swanson denied his request.

Respondent also claims Swanson neither used a new test sheet nor restarted the test after the first deficient breath sample. Sewald testified that it would have been proper for Swanson to use a new test sheet and restart the test. Swanson testified that he now would do the same.

Thomas Burr, a criminologist with the City of St. Paul Police Department, trained by the Bureau of Criminal Apprehension, testified that he and his operators in St. Paul are instructed that when a person gives a deficient sample on the first test, the test should be reoffered and a new test sheet should be inserted. If an officer again obtains a deficient sample test record, he is then to offer alternative tests.

Burr testified as to reasons a person might be unable to give an adequate sample: lack of adequate lung capacity, a medical problem such as asthma, failure to follow instructions, a problem with blowing such as tongue obstruction or not sealing the mouth around the mouthpiece, or failing to blow the requisite length of time.

The trial court found that respondent did not "refuse to permit testing," and rescinded the revocation of his driving privileges. The Commissioner appeals the trial court's order.

## ISSUES

1. Whether the trial court was clearly erroneous when it found that respondent did not refuse to permit testing?

2. Whether the failure of the officer to restart the test after it registered the first deficient sample rendered the test invalid?

## ANALYSIS

### I.

*Physical inability*

Under the implied consent law, all drivers in Minnesota consent to chemical testing to determine the presence of alcohol. Minn.Stat. § 169.123, subd. 2(a) (1984). The testing officer may determine the type of test. *Id.* If a breath test is chosen, the statute provides:

(a) In the case of a breath test administered using an infrared breath-testing instrument, the test shall consist of analyses in the following sequence: one adequate breath sample analysis, one calibration standard analysis, and a second, adequate breath sample analysis.

(b) In the case of a test administered using an infrared breath-testing instrument, a sample is adequate if the instrument analyzes the sample and does not indicate the sample is deficient.

(c) For purposes of this section when a test is administered using an infrared breath-testing instrument, *failure of a person to provide two separate, adequate breath samples in the proper sequence constitutes a refusal.*

Minn.Stat. § 169.123, subd. 2b (1984) (emphasis added). The rules promulgated by the Commissioner further provide that

[f]ailure of a person to provide two separate, adequate breath samples constitutes a refusal, *unless the failure is the result of the physical inability to provide a sample, in which case a sample of blood or urine must be provided by the person.*

Minn.R. 7502.0430, subpt. 1 (Supp.1984) (emphasis added).

In a case where an issue arises as to whether the driver's failure to give an adequate breath sample results from his physical inability to do so:

the trial court must make findings addressing the question whether respondent's failure to provide two breath samples resulted from his physical inability. If that explains the failure, the court must also find whether respondent refused to provide a urine sample or a blood sample.

*Aunan v. Comm. of Public Safety,* 361 N.W.2d 907, 909 (Minn.Ct.App.1985).

Under current law, if a police officer determines the driver is physically unable to provide a breath sample, an alternative test must be offered. If either alternative test is turned down by the driver, license revocation will follow.

■ If the officer determines that the driver is physically able to provide a breath sample and reports a refusal but does not offer the driver an alternative test, the driver may raise that issue at the implied consent hearing. Once that issue is raised, the trial court must make specific findings on the driver's claim of physical inability. *Id.,* 361 N.W.2d 907.

■ The trial court found that respondent attempted to give a valid test, and concluded respondent did not refuse testing. The court found that the alternative tests were not offered although respondent was willing to take one. While the findings could have been more specific, from the record we can reasonably infer a finding of physical inability, thus the trial court's finding is not clearly erroneous. Findings No. 3 and 4 are supported by the record. The court made the following findings of fact:

1. Petitioner herein at the request of police officers attempted to give a valid intoxilyzer test of his alcohol concentration.

2. Had his efforts to give a breath sample after the first failure been adequate a legally accurate test could not have been obtained, because the Intoxilyzer machine was not reset to accommodate a legally accurate test.

3. When told that his subsequent breath samples were inadequate to give a proper reading Petitioner offered to give a blood or urine test.

4. No alternative test was offered or given.

The court then ordered:

That Petitioner did not refuse to permit testing of his alcohol concentration and by reason thereof the Order of the Commissioner of Public Safety revoking Petitioner's driving privileges must be and is rescinded.

When the failure to give adequate breath samples is the result of respondent's physical inability, the Commissioner is obligated to offer a blood or urine test. Minn.R. 7502.0430, subpt. 1. Because no urine or blood tests were offered, and because the

trial court found physical inability, respondent did not refuse to take the test.

We note that respondent's express willingness to take an alternative test, although not determinative of the dispute over physical ability, nor the basis of our holding, lends credibility to respondent's claim that he did not refuse the alcohol test, was willing to take one, but was physically unable to blow hard enough into the Intoxilyzer.

## II.

### Invalid test

The trial court also found that even if respondent's efforts to give a breath sample after his first failure had been successful, a legally accurate test could not have been obtained because the Intoxilyzer had not been reset with a new testing sheet.

Respondent argues that the testing officer failed to follow the proper procedure when he failed to insert a new testing sheet and restart the test after the first deficient sample. Appellant contends that there is no requirement, statutory or otherwise, which compels an Intoxilyzer operator to offer a new breath test in cases where the first attempted breath sample is deficient, especially when the operator has reason to believe that the driver is not making a good faith effort to provide a proper sample. He further contends that in this situation, where respondent had already failed to provide the two adequate breath samples, offering respondent another opportunity would have been futile.

Due to our determination on the first issue, we do not address this issue of the validity of the test as given.

## DECISION

While the trial court did not explicitly find that the respondent had a physical inability to provide the required sample, we can reasonably infer from the facts and the court's stated comments that he was physically unable to give an adequate sample. Respondent was entitled to an alternative

test and was offered none. We do not reach the issue of the claimed invalidity of the testing method.

The trial court properly rescinded the revocation of respondent's driving privilege.

Affirmed.