**Bonita L. BALE, Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

**No. C8–85–1528.**

Court of Appeals of Minnesota.

April 22, 1986.

Richard F. Koch, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Mary B. Magnuson, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by NIERENGARTEN, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

NIERENGARTEN, Judge.

Appellant Bonita Bale was arrested for driving under the influence. After failing to provide two adequate breath samples, the Commissioner of Public Safety revoked her driving privileges for refusing the test. The trial court sustained the revocation, and Bale brings an appeal from the trial court's order.

## FACTS

Police officer David Rine received a radio dispatch concerning an intoxicated woman attempting to purchase liquor at a municipal liquor store. Rine was given a description of the woman's vehicle and he proceeded to the liquor store, where he observed the vehicle with its engine running parked next to the building, with Bale sitting in the driver's seat.

Rine radioed the dispatcher, requesting that a store employee confirm that Bale was the reported woman. The dispatcher confirmed and Rine approached Bale's vehicle and asked for her driver's license.

Rine observed that Bale's eyes were very bloodshot, her speech slurred, and her breath had an odor of alcoholic beverage. He requested that she perform a series of field sobriety tests. She did not touch her heels to her toes on the heel to toe test, and she touched the bridge of her nose on the finger to nose test. Rine gave Bale the *Miranda* warnings and asked her how she got to the liquor store. Bale admitted that she had driven there and Rine placed her under arrest for driving while under the influence. He read her the implied consent advisory. She indicated she understood it and wished to contact an attorney. Rine transported her to the Edina police station, and after Bale consulted with an attorney, Rine requested that she submit to a breath test. Bale agreed to take the test.

A certified Intoxilyzer operator attempted to administer the test to Bale six different times. On five of the tests Bale was unable to register any reading, and on one test she registered a deficient sample indicating an alcohol concentration of .228. The operator blew into the Intoxilyzer himself, and had Bale blow into a portable breath tester which she was able to complete with no problem. At the hearing, the operator testified that the portable tester is more difficult to complete than the Intoxilyzer. The operator testified that although Bale appeared to be cooperating, he definitely thought that she was deliberately faking her attempts. He also testified that he observed no physical incapacity, although Bale did mention that she was a heavy smoker.

Bale testified that she was blowing into the Intoxilyzer as hard as she could. She also testified that she had no intention of driving home from the liquor store.

The trial court sustained the revocation of Bale's driving privileges and she appeals.

## ISSUES

1. Whether the police officer's investigation of appellant's stopped vehicle was constitutional?

2. Whether the officer had probable cause to believe that appellant was driving and in physical control of her vehicle while under the influence?

3. Whether the trial court was clearly erroneous in finding that appellant's failure to provide two adequate samples was a refusal and was not due to physical inability?

## ANALYSIS

### I.

Bale argues that the police officer had no articulable grounds for approaching and investigating her stopped car. Bale notes that Rine testified there was nothing suspicious about the car. Consequently, she contends that a police officer should not be able to investigate a parked vehicle without regard to how innocuous or innocent the setting may be.

This fact situation does not show an investigation of an innocent setting. The officer had information not only that an intoxicated woman had attempted to buy liquor at the liquor store but that the intoxicated woman was in the car in the parking lot. It does not constitute a seizure for an officer to talk to a driver in an already stopped car. *State v. Vohnoutka,* 292 N.W.2d 756, 757 (Minn.1980).

### II.

Bale also contends that the officer did not have probable cause to believe that she was driving and in physical control of the vehicle while under the influence of alcohol. She contends that the officer had no time frame connecting the intoxication with the driving.

In determining whether a driver is in physical control of her motor vehicle, the law is interpreted in favor of the public and against the private interest involved. *See State, City of Falcon Heights v. Pazderski,* 352 N.W.2d 85, 87 (Minn.Ct.App. 1984). Where Bale was found sitting in the driver's seat of the car, exhibiting indicia of intoxication, with the car engine initially

running and the keys in the ignition, and where she admitted driving the car earlier, the officer had probable cause to believe she was driving and in physical control of the automobile.

The statutory provision regarding physical control of a vehicle, *See* Minn.Stat. § 169.121, subd. 1 (1984), addresses the concern that an intoxicated driver such as Bale who is in physical control of a vehicle may continue on her way in an intoxicated state. *See State, Department of Public Safety v. Juncewski,* 308 N.W.2d 316, 320 (Minn.1981); *Pazderski,* 352 N.W.2d at 88. In *Pazderski,* the evidence was insufficient to show that Pazderski was using the car for anything other than a bed. *Id.* at 88.

Despite Bale's protestations that she was merely waiting for a friend and had no intention of driving home from the liquor store, the evidence was sufficient to sustain the trial court's finding that the officer had probable cause to believe Bale was driving and in physical control of the vehicle while under the influence.

### III.

Bale argues as a final contention that her failure to provide adequate breath samples was reasonable based on her physical inability to do so, and that she should have been offered an alternative test. *See* Minn. Stat. § 169.123, subd. 2b(c), (1984); Minn.R. 7502.0430, subpt. 1 (1985).

■ If an officer determines that the driver is physically able to provide a test, does not offer the driver an alternative test, and reports a refusal, the driver may raise the issue of physical inability at the hearing. *Carlson v. Commissioner of Public Safety,* 374 N.W.2d 791, 794 (Minn. Ct.App.1985). Once the issue is raised, the trial court must make specific findings on the alleged inability. *Aunan v. Commissioner of Public Safety,* 361 N.W.2d 907, 909 (Minn.Ct.App.1985).

■ The trial court here specifically found that Bale did not prove by a fair preponderance of the evidence that her refusal was reasonable due to a physical ina-

bility despite testimony from the officer that she was upset, nervous and crying during the testing period, and that she said she was a heavy smoker. That same officer also testified that he thought Bale was deliberately faking her efforts and that he observed no physical inability. The finding was not clearly erroneous.

■ Bale contends she need not prove physical inability by a preponderance of the evidence. However, her failure to provide two separate, adequate breath samples in the proper sequence constitutes a refusal, *See* Minn.Stat. § 169.123, subd. 2b(c) (1984), unless she could affirmatively show she was physically unable to provide a sample. *See Cantor v. Commissioner of Public Safety,* 376 N.W.2d 530, 532 (Minn.Ct.App. 1985). Appellant has the burden of proving the affirmative defense. *See Chemlease Worldwide Inc. v. Brace, Inc.,* 338 N.W.2d 428, 437 (Minn.1983). She must do so by a preponderance of the evidence. *See King v. Commissioner of Public Safety,* 366 N.W.2d 613, 615 (Minn.Ct.App. 1985).

### DECISION

The trial court properly sustained the revocation of appellant's driving privileges for refusal to take the test.

Affirmed.