Paulette Patricia BELILLE,
Petitioner, Appellant,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

No. C8-87-433.

Court of Appeals of Minnesota.

Sept. 8, 1987.

Review Denied Nov. 6, 1987.

Loren M. Solfest, Roseville, John D. Flanery, Minneapolis, for appellant.

Hubert H. Humphrey, III, State Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by POPOVICH, C.J., and FOLEY and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Appellant Paulette Belille was arrested for driving while under the influence. Her license was revoked for refusing testing when she failed to provide an adequate breath sample for the Intoxilyzer. She petitioned for judicial review, contending that she was physically unable to provide an adequate sample. The trial court sustained the revocation, and Belille appeals. We reverse.

## FACTS

Officer David Norman Prois was on duty at approximately 2:45 a.m. on December 24, 1986. He stopped a vehicle which he observed was being driven erratically. The driver, Paulette Patricia Belille, explained that her car was drifting to the right because the tires were bad.

Prois noticed an odor of alcoholic beverage on appellant's breath and that her eyes were red and bloodshot. Appellant performed field sobriety tests, and Prois decided that she failed them. Prois then asked appellant to take a preliminary breath test. She attempted the test, but did not provide an adequate sample. Another officer brought his testing unit, which had been fully charged, and appellant was requested four or five times to provide a sample. She again failed to blow an adequate sample. The officer formed the opinion that appellant was under the influence, placed her under arrest and transported her to the Fridley Police Department.

Appellant was taken to the videotape room and read the sobriety questionnaire and the Minnesota Implied Consent Advisory. Appellant stated that she understood, whereupon the sobriety tests were videotaped. She performed the tests adequate-ly. The officer offered appellant another breath test, which she agreed to take.

Prois, a certified Intoxilyzer operator, administered the test. Appellant attempted to provide an adequate breath sample many times, but did not do so. The officer testified that appellant stopped blowing when the tone indicating adequate breath pressure sounded and that she would sometimes blow around rather than through the mouthpiece. He said he could feel no effort in appellant's lungs when his hand was placed on her back while she was blowing. Prois opined, based on his training and experience, that appellant was capable of providing an adequate sample but was avoiding doing so. The officer determined not to offer appellant a blood test because she was "deathly afraid of needles."

Appellant testified that on the day in question she began work at 6:30 a.m., had a rum and Coke for lunch, a glass of wine in the early evening and some food just before being apprehended. Appellant said she had difficulty breathing because she smoked cigarettes and suffered from chronic bronchitis. When she took the breath tests, she claimed she experienced hyperventilation, chest pains, dizziness and was intimidated. She stated she was unable to perform the tests satisfactorily.

Appellant said that in spite of her fear of needles, she requested a blood or urine test. The officer told appellant she was free to take a blood test on her own, and called the hospital for her. She went to the hospital and obtained a blood test. The trial court made a prehearing ruling that the result of the blood test was irrelevant. Appellant made an offer of proof that the blood test showed an alcohol concentration of .05.

The trial court found that
there certainly was testimony here, and some indication, that the petitioner had some physical limitations. The court has observed itself during the course of these proceedings, that the petitioner does * * * appear to breathe through her mouth.

However, the trial court determined the evidence did not rise to a level which per-

mitted a finding of physical inability and sustained the revocation concluding that the refusal was unreasonable.

## ISSUES

1. Did the trial court err when it found appellant did not present sufficient proof of her physical inability to provide two adequate breath samples?

2. Did the trial court abuse its discretion when it did not admit appellant's blood test result?

## ANALYSIS

### I.

■ Appellant's failure to provide two adequate breath samples constitutes a refusal to submit to a breath test, Minn.Stat. § 169.123, subd. 2b(c) (1986), unless such failure is the result of physical inability. Minn.R. 7502.0430, subpt. 1 (1985). If the driver is physically unable to provide a breath sample, a blood or urine test must be provided. *Id.; Aunan v. Commissioner of Public Safety*, 361 N.W.2d 907, 908–09 (Minn.Ct.App.1985).

■ When a police officer determines a driver is physically unable, an alternative test must be offered. If the alternative test is turned down, the driver's license will be revoked. *Carlson v. Commissioner of Public Safety*, 374 N.W.2d 791, 793 (Minn. Ct.App.1985). However, if the officer decides the driver is physically able and reports a refusal, the driver may raise the issue of physical inability in an implied consent proceeding. *Id.* at 794. The trial court must then make specific findings as to whether the driver was physically unable. *Aunan*, 361 N.W.2d at 909.

■ The issue of physical inability is a question of fact, and the trial court's findings will not be reversed unless clearly erroneous. *Burke v. Commissioner of Public Safety*, 381 N.W.2d 903, 904 (Minn. Ct.App.1986). Due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Minn.R. Civ.P. 52.01. However, a trial court's findings may be held clearly erroneous if, upon a review of the entire record, the reviewing court is left with a firm and definite conviction that a mistake was made. *Kadrlik v. Commissioner of Public Safety*, 388 N.W.2d 8, 10 (Minn.Ct.App.1986). The reviewing court may reverse the trial court if it erroneously applied the law to the facts of the case. *Berge v. Commissioner of Public Safety*, 374 N.W.2d 730, 732 (Minn. 1985).

The trial court found some indication of physical inability but determined the evidence was not sufficient. This court has reviewed several cases in which trial courts determined that the drivers failed to meet their burden of proof. In *Lewandowski v. Tschida*, 396 N.W.2d 711, 713 (Minn.Ct. App.1986), the driver alleged physical inability because he had a cold, a scratchy throat, a slight respiratory problem, he was a smoker, had worked eight hours, and was tired. The appellant made no statements to the Intoxilyzer operator explaining his inability. The trial court found there was no evidence of physical inability to take the test, and that no observation to that effect was made by the officer. This court determined there was insufficient evidence to support a conclusion that the trial court clearly erred in determining appellant was not physically unable to provide a breath sample. *Id.*

In *Benson v. Commissioner of Public Safety*, 397 N.W.2d 452, 453 (Minn.Ct.App. 1986), the driver asserted he was unable to provide a breath sample due to his back condition and lung infection. The trial court found this unpersuasive, considering appellant's physical condition as a result of his intoxication and his initial ability to blow into the Intoxilyzer mouthpiece. It determined appellant's intoxication was the primary cause of his difficulties.

Finally, in *Bale v. Commissioner of Public Safety*, 385 N.W.2d 870, 873 (Minn.Ct. App.1986), the trial court found that appellant had not met her burden of proving physical inability despite testimony that she was upset, nervous, crying, and a heavy smoker, and where the officer believed she was deliberately faking her efforts and observed no physical inability.

We believe the prior cases are distinguishable from this one, where the trial court, in fact, credited appellant's testimony that she had some physical limitations, and the trial court observed that appellant breathed through her mouth. This determination was made in the face of conflicting testimony from the officer that he did not believe appellant was physically unable to provide a sample. Furthermore, we note that appellant did not merely profess a willingness to take a blood test. She actually went to the hospital and obtained one, despite her fear of needles.

An offer to take an alternative test is not conclusive proof that a driver was physically unable to provide an adequate sample, *Lewandowski*, 396 N.W.2d at 714, although it strongly supports that position. *Carlson*, 374 N.W.2d at 794. This case presents strong support for appellant's claim of physical inability. After reviewing the entire transcript, and considering that the trial court credited appellant's testimony as to her physical limitations and that appellant actually obtained an alternative test, we believe that the trial court erred when it determined appellant did not present sufficient evidence of physical inability.

## II.

At the hearing, appellant attempted to introduce the results of her blood test. The trial court deemed that evidence irrelevant and appellant preserved the issue for review by making an offer of proof. While our resolution of the issue of appellant's physical inability is dispositive in this matter, our observations regarding admissibility of her blood test results buttress our earlier determination. Appellant argues that the result of the blood test supports her testimony that she was not under the influence, and thus her credibility in general. We agree and believe the trial court should have considered not only the fact that appellant obtained a blood test, but that at .05 the test result is prima facie evidence that appellant was not under the influence. The trial court's finding that there was "some indication that the [appel-

lant] had some physical limitations" evidences a recognition of appellant's credibility as a witness. Certainly, the results of appellant's independently obtained blood test would have assisted the trial court.

Surely, upon consideration of the blood test results, the trial court properly could have inferred that the same factor which motivated appellant to obtain a blood test also motivated her to conscientiously attempt to provide an adequate breath sample: her certain conviction that she was not driving a vehicle while under the influence of alcohol.

## DECISION

The order of the trial court sustaining the revocation is reversed.

Reversed.

FOLEY, Judge (dissenting).

I respectfully dissent. I am not persuaded that appellant was physically unable to provide an adequate breath sample.

The issue of physical inability is a question of fact and the trial court's findings will not be reversed unless clearly erroneous. *Burke v. Commissioner of Public Safety*, 381 N.W.2d 903, 904 (Minn.Ct.App. 1986). Due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Minn.R.Civ.P. 52.01. Here, the majority is substituting its judgment for that of the trial court.

The trial court found that appellant's alleged physical inability was insufficient to meet the criteria justifying refusal. Claims substantially similar to appellant's have been rejected in a number of cases in which this court has held that the driver has failed to meet his/her burden of proof. *See, e.g., Benson v. Commissioner of Public Safety*, 397 N.W.2d 452, 453 (Minn.Ct. App.1986) (driver had back problems and lung infection); *Lewandowski v. Tschida*, 396 N.W.2d 711, 713 (Minn.Ct.App.1986) (driver was a smoker with a cold, scratchy throat, fever, and slight respiratory problem who had worked eight hours and was tired); *Bale v. Commissioner of Public Safety*, 385 N.W.2d 870, 873 (Minn.Ct.App.

1986) (driver was a heavy smoker who was upset, nervous and crying). All of these same types of difficulties seem to have troubled appellant.

The majority appears to rely on the fact that appellant voluntarily submitted to a subsequent blood test and its result as proof of her physical inability to provide an adequate breath sample. That is not the standard by which to determine · if there was a refusal. In *Lewandowski,* we held that "appellant's willingness to take another test does not *compel* a finding that the trial court's determination was clearly erroneous." *Id.* at 714 (emphasis supplied).

Here, the majority does not distinguish between the criminal offense of DWI and the implied consent case, which is civil in nature. Determinations of issues under the two are totally separate and distinct and have different criteria and standards. *See State v. Hanson,* 356 N.W.2d 689, 692 (Minn.1984) ("As we have made clear in a number of cases the revocation of a driver's license under the implied consent law, is a civil penalty imposed administratively regardless of the outcome of any criminal proceeding under section 169.121 arising from the same incident. * * * the fact that [appellant] was acquitted of the criminal charge * * * does not render the prior implied consent revocation based on the same incident invalid.") Here, the majority is applying the DWI criminal criteria to the civil proceeding of implied consent.

As to the admissibility of the results of the blood test, I believe the evidence would be relevant if this were a criminal case. Here, however, we are not asked to decide appellant's guilt or innocence, but merely whether the trial court erred in determining that appellant failed to meet her burden of proving that she was physically unable to provide an adequate breath sample.

I would affirm.