Jeffrey Eldon WOLLE,
petitioner, Appellant,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

No. C7–87–1198.

Court of Appeals of Minnesota.

Oct. 6, 1987.

Stephen D. Gabrielson, Fairmont, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Kenneth H. Bayliss, III, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by NORTON, P.J., MULALLY, and LOMMEN, JJ.,* with oral argument waived.

## OPINION

MULALLY, Judge.

Appellant was arrested for driving while under the influence. He did not provide an adequate breath sample and his license was revoked for refusal. He petitioned for judicial review, and the trial court sustained the revocation. He appeals from the trial court order.

## FACTS

On March 15, 1987, appellant's vehicle was stopped because one headlight was out. Fairmont Police Officer Lance Wilken placed appellant in the rear seat of his squad car and requested that he provide a breath sample for the ALERT model preliminary breath test. Wilkin explained to appellant that the instrument required six to seven seconds of steady continuous air to keep it operating. Appellant did not provide a sufficient sample on his first attempt. He then provided an adequate sample, blowing sufficiently hard that after the machine gave an evaluation, the officer had to tell him to stop blowing. Appellant failed the preliminary test.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

Officer Brad Gerhardt administered the Intoxilyzer test at approximately 2:10 a.m. Gerhardt has been trained on the Alert preliminary breath testing device, the Intoxilyzer, and the Breathalyzer. He has been running Intoxilyzer tests for about three years, and estimated that he witnessed over 100 Intoxilyzer tests. Gerhardt asked appellant to provide a breath sample. Appellant blew into the machine, but did not provide an adequate breath sample. The test was ended by the machine because of radio frequency interference.

Gerhardt started a second test sequence, but had to delete it because appellant put a lighted cigarette in his mouth, despite instructions from Officer Wilken earlier not to smoke. The officer waited 15 additional minutes and then began a third test. Appellant gave an inadequate sample. Gerhardt made the following notes on the test record: "puffs of air, backed off on tone," indicating as soon as the tone activated appellant backed off on his breathing. He placed his hand on appellant's back to determine whether he was giving a deep lung sample; he did not believe appellant was doing so. Gerhardt believed appellant did not want to complete the test. Appellant indicated to the officer he had some problems, but the officer could not testify specifically as to what appellant told him. Gerhardt testified the preliminary breath test and the Intoxilyzer both require six inches of water pressure.

Appellant attributed his failure to provide an adequate breath sample to his recent illness, smoking and history of respiratory ailments. He has suffered from scarlatina, pleurisy, chest colds, and pneumonia, which were caused or aggravated by conditions at his places of employment.

Appellant testified he agreed to take the test, and intended to give an adequate sample. He knew he was guilty and intended to plead guilty to D.W.I. He tried to give a test sample three to four times, but could not get the deep breath out; it felt almost like he had asthma. While he did not have any chest pains, he felt dizzy, light headed and queasy, as if he had blown up too many balloons. He also had a bad cold, with a runny nose, was suffering from shortness of breath due to pleurisy, and had had pneumonia at Christmas time. He told the officers he had lung problems.

Appellant also explained he had a cigarette between the first and second test, but no one said he could not do so. He also asserted he had blown in the preliminary breath test for only one or two seconds. He requested the officer take him to the hospital and give him a blood test. The officer told him he had his chance, and there was no time because another person was being held. Appellant was placed in a waiting room and taken to detoxification.

Appellant pleaded guilty to aggravated D.W.I. on March 19, 1987, and has since entered a treatment program.

On rebuttal testimony, Officer Wilkin testified he had arrested appellant on August 1, 1984 for D.W.I. and a breath test then revealed an alcohol concentration of .23.

The trial court found appellant was physically able to provide a breath sample, and his refusal to submit to testing was not reasonable. It also determined he pleaded guilty at the first available opportunity.

Appellant brought a motion for a new trial, requesting the findings be amended to indicate he was physically unable to provide a breath sample, he intended to plead guilty while providing the test sample, and he did so at the first available opportunity. The trial court denied appellant's motion.

## ISSUES

1. Was the trial court clearly erroneous in finding appellant was able to provide an adequate breath sample?

2. Was appellant's refusal reasonable?

## ANALYSIS

■ 1. The failure to provide two adequate breath samples constitutes a refusal to submit to testing. Minn.Stat. § 169.123, subd. 2b(c) (1986). However, alternative testing must be provided when the failure is due to physical inability. Minn.R. 7502.-0430, subpt. 1 (1987); *Aunan v. Commis-*

*sioner of Public Safety,* 361 N.W.2d 907, 908–09 (Minn.Ct.App.1985). If the officer determines the driver is physically able to provide a breath sample and reports a refusal, the driver may raise the issue of physical inability at the implied consent hearing. *Carlson v. Commissioner of Public Safety,* 374 N.W.2d 791, 794 (Minn. Ct.App.1985). The driver has the burden of showing as an affirmative defense that he was physically unable to provide a breath sample. *Swanke v. Commissioner of Public Safety,* 385 N.W.2d 403, 406 (Minn.Ct.App.1986). The trial court's findings will not be reversed unless clearly erroneous. *Burke v. Commissioner of Public Safety,* 381 N.W.2d 903, 904 (Minn. Ct.App.1986).

The major finding which appellant challenges is the trial court's determination that he was physically able to provide a breath sample, arguing the overwhelming weight of the evidence requires a finding he was physically unable. He also challenges the trial court's reliance on his ability to complete a breath test in August 1984, asserting it has no bearing on his ability to complete the test in March 1987. Finally, he contends the officer was in a hurry to perform the Intoxilyzer test on another D.W.I. suspect, and he should not be subjected to revocation for an additional nine months because the officers were short on time.

The Commissioner argues this case involves a credibility issue between the officers and appellant. Appellant was able to provide a sample for the preliminary breath test which, according to the testimony of the officers, required the same amount of force for the same duration as the Intoxilyzer. Finally, Officer Gerhardt had the opinion, based upon his extensive breath testing experience, and his observations of appellant, that appellant's failure to provide the requested samples was due to lack of cooperation rather than physical inability. The Commissioner asserts if the trial court had believed appellant's testimony in its entirety, it would have found him physically unable.

An opinion presenting somewhat similar facts was recently issued by this court. In *Belille v. Commissioner of Public Safety,* 411 N.W.2d 589 (Minn.Ct.App.1987), a driver who failed to provide adequate breath samples testified as to her physical inability to do so. The trial court found some physical limitations existed, but determined the evidence did not rise to a level which permitted a finding of physical inability. This court reversed, on the grounds the trial court had credited appellant's testimony over conflicting evidence by the officer who did not believe she was physically unable; similar testimony was given here. In addition, the driver did not merely offer to take an alternative test, but obtained one on her own. Finally, the driver had been unable to provide an adequate sample for the preliminary breath test.

While there are similarities between the testimony in the two cases, there are also important distinctions. The appellant here was able to provide a sufficient sample for the preliminary breath test. Appellant testified that he offered to take an alternative test, but did not actually obtain one.

The trial court in this case had to decide whether appellant was physically unable to provide a breath sample. Unlike *Belille,* it credited the officer's testimony, rather than appellant's, and specifically found appellant was able to provide an adequate breath sample. While there was conflicting testimony on the issue, the trial court's decision is supported by the evidence, and is not clearly erroneous.

■ 2. Appellant also argues his refusal was reasonable pursuant to *State, Department of Highways v. Schlief,* 289 Minn. 461, 462, 185 N.W.2d 274, 275 (1971). In *State, Department of Public Safety v. Mulvihill,* 303 Minn. 361, 227 N.W.2d 813 (1975), the supreme court held a person claiming to have reasonable grounds for refusal under *Schlief* would have to meet a three-part test showing:

(1) At the time of the refusal, he must intend to plead guilty to a charge of violating Minn.St. § 169.121, subd. 1; (2) he must enter a plea of guilty to a charge which subjects him to automatic

revocation under § 169.121, subd. 3; and (3) he must plead guilty at the first available opportunity. *Mulvihill*, 303 Minn. at 367–68, 227 N.W.2d at 817. The trial court rejected an argument appellant had intended to plead guilty at the time he was blowing into the machine, and determined the refusal was not reasonable. Without addressing the Commissioner's arguments as to the continuing validity of *Schlief*, we hold the trial court's findings are not clearly erroneous and the *Schlief* elements have not been met. *See Smisek v. Commissioner of Public Safety*, 400 N.W.2d 766, 768 (Minn.Ct.App.1987).

### DECISION

The trial court's order sustaining the revocation is affirmed.

Affirmed.